**Luis M. RIVERA, Plaintiff-Appellee,**

v.

**Evangelio LA PORTE, Defendant-Appellant.**

**No. 668, Docket 89-7699.**

United States Court of Appeals, Second Circuit.

Argued Jan. 10, 1990.

Decided Feb. 16, 1990.

Irving Anolik, New York City, for defendant-appellant.

Eugene N. Harley, New York City (Levy, Gutman, Goldberg & Kaplan, New York City, on the brief), for plaintiff-appellee.

Before MESKILL and NEWMAN, Circuit Judges, and POLLACK, Senior District Judge.[*]

JON O. NEWMAN, Circuit Judge:

This appeal presents the apparently novel issue of whether a jury's report of a deadlock on some counts of a complaint in a civil suit may be relied upon to demonstrate an inconsistency with verdicts returned on other counts. The appeal also reveals the hazards of submitting cases of more than minimal complexity to a jury without a written form calling for either special verdicts or answers to interrogato-

---

[*] The Honorable Milton Pollack of the District Court for the Southern District of New York, sitting by designation.

ries. Evangelio LaPorte appeals from the June 6, 1989, judgment of the District Court for the Southern District of New York (Shirley Wohl Kram, Judge) awarding Luis Rivera $25,000 after a jury found LaPorte liable to Rivera for the denial of federally protected civil rights and for the state law tort of malicious prosecution. We affirm.

## Facts

This lawsuit arose from a traffic dispute that escalated into violence. The jury was entitled to find the following facts. LaPorte is a New York City corrections officer. On the day in question, while off duty, he was driving to a boat show at the New York Coliseum. He stopped his van on 61st Street behind cars waiting to turn into a parking lot that he too planned to enter. Cars were parked on both sides of the street, leaving what should have been two lanes for driving, one of which was occupied by the line of double-parked cars outside the parking lot. Rivera was driving a car behind LaPorte's van. Finding passage along 61st Street blocked by the van, Rivera went to the window on the driver's side and asked the driver to move his van slightly to the right to permit traffic to pass. LaPorte kept his window rolled up and ignored Rivera's request. A few moments later Rivera again appealed to the driver and again received no response. With traffic behind him building up, Rivera made his request through the closed van window a third time.

At this point, LaPorte came out of the van, pushed Rivera to the ground, jumped on him, kicked him, and struck him on the forehead and eye with a blunt object. LaPorte then yelled, "I'm a police officer, you're under arrest." LaPorte handcuffed Rivera and asked a bystander to call the police. When a police car arrived, LaPorte placed Rivera in the rear seat of the car, got in the rear seat with him, and was driven by a police officer to a police station. With LaPorte in attendance at all times, Rivera was questioned, taken to a hospital, taken to central booking, and finally released late that same night.

Rivera was tried in state court on charges of assault and harassment. At that trial LaPorte claimed that Rivera had precipitated the altercation first by shoving LaPorte's wife, who, LaPorte contended, was standing next to the two men as they argued over the traffic problem, and then by punching LaPorte in the face. LaPorte acknowledged hitting Rivera, but claimed he did so in self-defense. Rivera denied touching LaPorte in any way. Rivera also disputed whether LaPorte's wife was present at the scene. In the state court criminal case, Rivera was acquitted. He then filed a five-count complaint in the District Court, alleging a violation of his civil rights, 42 U.S.C. § 1983 (1988), and four state law torts—malicious prosecution, assault, false arrest, and false imprisonment.

At the federal trial, neither Rivera's counsel nor the trial judge, in her initial instructions, provided the jury with a precise understanding of the theory of plaintiff's civil rights claim. Counsel argued generally, without focusing on the separate causes of action, that it was unlawful for LaPorte to have arrested and assaulted Rivera. The trial judge initially characterized the section 1983 claim as a denial of civil rights "by the use of excessive force in making an arrest while acting under color of state law." In instructing on the claim, however, Judge Kram identified two constitutional rights, a right "not to be arrested without due process of law" and a right "not to be subjected to unreasonable or, in other words, excessive force while being arrested." In charging the elements of the section 1983 cause of action, the trial judge did not clarify the confusion but simply stated that Rivera must show that LaPorte's acts "caused him to suffer the loss of a federal right." A further instruction explained "excessive force," though it was not made clear whether this explanation related to the common law assault claim, the civil rights claim, or both. With respect to the state law torts, Judge Kram fully explained the elements of each tort. In particular, she instructed that the jury could find for the plaintiff on the malicious prosecution claim if the plaintiff proved

both that LaPorte did not have probable cause and that he acted maliciously.

Since the jury had not been given a verdict form, it is not surprising that their first note to the judge asked, "What are the specific charges against Mr. LaPorte for which we must bring in a decision and what the counter-charges are?" After colloquy with counsel, Judge Kram answered that Rivera had made the following claims against LaPorte: "One, that defendant LaPorte is liable under state law for assault, false arrest, false imprisonment and malicious prosecution. Two, that Mr. LaPorte violated plaintiff's civil rights under the United States Constitution by the use of excessive force in making an arrest while acting under color of state law." She also explained that there were no counterclaims. Later in the deliberations, the jury asked to have reread the claims Rivera was making, other than the civil rights claim.

The jury ultimately reported its verdict as follows:

> We, the jury, find Mr. LaPorte guilty on the following counts:
> 1. Malicious prosecution.
> 2. Violation of civil rights.
> We cannot unanimously agree on the following counts:
> Assault, false arrest, excessive force.

The last of the four state law torts submitted to the jury had in fact been false imprisonment, not excessive force. The jury also reported that it awarded the plaintiff compensatory damages of $10,000 and punitive damages of $15,000. The trial judge discharged the jury without objection by either counsel.

Counsel for LaPorte immediately moved for judgment notwithstanding the verdict but did not then, nor subsequently, move in the District Court for a new trial. In a written opinion, Judge Kram denied the motion for judgment n.o.v. She ruled that the evidence sufficed to permit the jury to find for plaintiff on the malicious prosecution count because the jury could have found that LaPorte lacked probable cause to arrest Rivera and acted maliciously. In upholding the verdict on the civil rights count, Judge Kram declined to rely on the theory that LaPorte used excessive force. Instead, she pointed out that the section 1983 verdict "could have been based on the arrest of plaintiff without probable cause." With respect to the counts on which the jury could not agree, Judge Kram ruled that the lack of verdicts did not provide a basis for concluding that the defendant was entitled to judgment, and she ordered a new trial with respect to these counts. Judgment awarding plaintiff $25,000 was entered, pursuant to Fed.R.Civ.P. 54(b), on the two verdicts that the jury returned. At oral argument of this appeal, counsel for Rivera represented that a new trial would not be pursued in the event of affirmance.

## Discussion

■ Appellant renews his contention that the jury's failure to return verdicts in plaintiff's favor on the claims of assault and false arrest requires entry of judgment n.o.v. or at least a new trial. He contends that the jury "apparently" accepted his claim that he acted in self-defense. He relies on *Adams v. New York City Housing Authority*, 24 A.D.2d 948, 265 N.Y. S.2d 220 (1st Dep't 1965), where a new trial was ordered after a jury found for the plaintiff on a claim of malicious prosecution and for the defendant on claims of false arrest and assault. However, as Judge Kram pointed out, the jury's failure to return any verdicts on the false arrest and assault claims in this case cannot be equated with the jury's findings in favor of the defendant in *Adams*. We have previously observed that the only verdict that may be recognized is a verdict returned by a jury in open court. *See United States v. MacQueen*, 596 F.2d 76, 81 (2d Cir.1979). A jury's inability to reach a verdict cannot be taken as a finding against a plaintiff. A jury might be deadlocked at five to one in plaintiff's favor. Obviously, in such a case, the disagreement could not be used to treat the votes of the five jurors favoring the plaintiff as if they had in fact favored the defendant.

Our case would be in a different posture if the jury had been instructed that it could not return a verdict for the plaintiff on the

malicious prosecution count unless it first *returned a verdict* in his favor on the false arrest count. But no such charge was requested or given. The case would also be different, and would come to us for review with considerably enhanced clarity, if the jury had been asked to return special verdicts under Fed.R.Civ.P. 49(a) or answer interrogatories along with its return of a general verdict under Fed.R.Civ.P. 49(b). Under either of those procedures, the Judge might have usefully structured the jury's decision-making by telling it first to consider whether the plaintiff has proven that the defendant lacked probable cause for the arrest and, only if it decided that issue in plaintiff's favor, then to proceed to the other elements of malicious prosecution. As this case was submitted to the jury, however, the disagreement on some counts cannot be used to create an inconsistency with the verdicts that were returned. Jurors may have innumerable reasons for not returning verdicts on some counts, including their view, entirely understandable in this case, that by returning verdicts in plaintiff's favor on two counts and awarding damages, they had sufficiently discharged their fact-finding responsibilities to permit the District Court to enter judgment. If that was their view, they were correct.

Appellant puts his point more artfully by contending that a finding in plaintiff's favor on the issue of whether LaPorte lacked probable cause for the arrest was essential to a verdict in plaintiff's favor on the malicious prosecution count and that the lack of a plaintiff's verdict on the false arrest count, whether because of disagreement or for any other reason, demonstrates that the jury did not find an essential element of the tort of malicious prosecution. But by returning a plaintiff's verdict on malicious prosecution the jury must have found in plaintiff's favor on the issue of lack of probable cause because they had been instructed that lack of probable cause was an element of malicious prosecution. The disagreement on the separate count of false arrest should not be taken to mean that the jury failed to find lack of probable cause; it means only that for whatever reasons thought sufficient by the jurors, they declined to pursue the topic of probable cause a second time in connection with the false arrest count, once having resolved it in plaintiff's favor in connection with the malicious prosecution count.

Even in circumstances where jurors announce verdicts that are arguably inconsistent, courts are obliged to harmonize their findings on any reasonable interpretation that finds support in the evidence. *See* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2513 (1971). That principle applies with even greater force to require acceptance of verdicts, fully supported by the evidence, that are claimed to be impaired only by speculative reasons why the jurors elected not to return verdicts on other counts.

Appellant's contentions fare no better with respect to the civil rights count, though here we part company with the District Judge's rationale for sustaining the verdict. Judge Kram declined to uphold this verdict on the basis of use of excessive force, preferring to assume that the jury found a constitutional violation of the right not to be arrested without probable cause. The difficulty with that approach is that the District Judge explicitly instructed the jury that Rivera's civil rights claim was "the excessive use of force in making an arrest" and repeated this statement of the claim at the critical point during deliberations when the jury asked to be told the "specific" charges. We have previously pointed out that it is "helpful" in civil rights trials to ask the jury "separate questions whether the officer had denied the plaintiff a constitutional right in any of the ... respects claimed (each of which could have been listed on the [jury verdict] form for appropriate marking by the jury)." *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 43 (2d Cir.1985), *cert. denied*, 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 685 (1987). Had that been done in this case, we would know whether the jury found a civil rights violation because probable cause for the arrest was lacking or because excessive force was used in making the arrest, or both. Separating the bases of a civil rights

verdict not only assists review in those cases where an alleged error or even a claim of insufficiency of evidence may be pertinent to one basis but not another; it also assists a jury in more carefully assessing damages in those cases where the amount of damages depends on the kind of violation that occurred. In this case, for example, the damages for injuring the plaintiff by means of excessive force, which sent him to the hospital, were likely to be more than what the jurors would have awarded if they had found only a violation of his right not to be unlawfully arrested.

Without the benefit of a jury verdict form that reveals the grounds of the jury's civil rights verdict, we are obliged to sustain the verdict if, viewed in the light most favorable to the plaintiff, the evidence permitted a reasonable jury to find in his favor on the theory on which the civil rights claim was submitted to the jury. *See Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 367 (2d Cir.1988). Since the District Judge told the jury, during the charge and in response to the jury's question, that Rivera's civil rights claim was use of excessive force, we must uphold the verdict if the evidence supports this theory. Without doubt, it does, although it would also support a civil rights verdict based on an arrest without probable cause. The jurors' decision not to return a separate verdict on an excessive force "count" (which they were not asked to do in any event) no

more detracts from the validity of their civil rights verdict than their decision not to return a separate verdict on false arrest detracts from their verdict on malicious prosecution. The District Court's denial of the defendant's motion for judgment n.o.v. was correct.

Though we have authority to entertain for the first time on appeal defendant's alternative request for a new trial, we see no basis for granting such relief. The evidence fully supports the verdicts, the charge correctly informed the jury of the elements of the causes of action on which the defendant was found liable, and, under the charge that was given, the jury's failure to return verdicts on all counts does not invalidate the verdicts that were returned.[1]

■■■ Appellant also contends that the evidence was insufficient to support the element of the civil rights violation requiring action "under color of law." It is not entirely clear whether his contention is based on the fact that LaPorte was off duty at the time of the episode, that his normal duties did not include making arrests, or that this particular arrest was made as a result of what he terms a "private argument." However framed, the contention fails. The off-duty status of an arresting officer does not mean that he is not acting under color of law. *See Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1429 (10th Cir.1984), *vacated on other grounds and remanded for reconsidera-*

---

1. Since we hold that a new trial is not required in the circumstances of this case, we need not decide whether a party, claiming entitlement to a new trial on the ground that a jury's failure to return verdicts on certain counts impairs the validity of verdicts that it has returned, must request that the jurors resume deliberations or at least object to their being excused in order to preserve his claim. On the related issue of whether an objection to the inconsistency of jury findings that have been made is waived in the absence of a request to have the jury resume deliberations, courts have found waiver where the jury returned a general verdict accompanied by answers to interrogatories under Rule 49(b), *Stancill v. McKenzie Tank Lines, Inc.*, 497 F.2d 529, 534–35 (5th Cir.1974) (alternate holding); *Ludwig v. Marion Laboratories, Inc.*, 465 F.2d 114, 118 (8th Cir.1972) (alternate holding); *Barnes v. Brown*, 430 F.2d 578, 580 (7th Cir.

1970); *Tennessee Consolidated Coal Co. v. United Mine Workers*, 416 F.2d 1192, 1200–01 (6th Cir.1969), *cert. denied*, 397 U.S. 964, 90 S.Ct. 999, 25 L.Ed.2d 256 (1970); *Cundiff v. Washburn*, 393 F.2d 505, 507 (7th Cir.1968); *Kirkendoll v. Neustrom*, 379 F.2d 694, 698–99 (10th Cir.1967), but found that a request for resumption of deliberations is not required where the jury returns special verdicts under Rule 49(a), *Pierce v. Southern Pacific Trans. Co.*, 823 F.2d 1366, 1370 (9th Cir.1987); *Malley–Duff & Associates, Inc. v. Crown Life Ins. Co.*, 734 F.2d 133, 144–45 (3d Cir.), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 564, 83 L.Ed.2d 505 (1984); *Alverez v. J. Ray McDermott & Co.*, 674 F.2d 1037, 1040–41 (5th Cir.1982). *But see Skillin v. Kimball*, 643 F.2d 19, 19–20 (1st Cir.1981) (waiver for lack of request to have jury resume consideration; Rule 49(a) procedure apparently used).

*tion*, 474 U.S. 805, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985), *adhered to on remand*, 796 F.2d 1307 (10th Cir.1986); *Traver v. Meshriy*, 627 F.2d 934, 938 (9th Cir.1980); *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir.1975), *cert. granted*, 425 U.S. 910, 96 S.Ct. 1505, 47 L.Ed.2d 760 (1976), *cert. dismissed*, 429 U.S. 118, 97 S.Ct. 514, 50 L.Ed.2d 269 (1976). LaPorte does not deny that as a correction officer he was a "peace officer" under New York law, N.Y.Crim.Proc.Law § 2.10(25) (McKinney 1981), and was authorized to make an arrest within his geographical area for an offense committed in his presence, *id.* § 140.25(3)(a) (McKinney 1981). He was carrying handcuffs issued by the New York City Department of Corrections and an "off-duty" revolver. He identified himself as a police officer (or, according to some testimony, as a peace officer) in making the arrest, he used the handcuffs, he placed Rivera in a police car, and he accompanied him throughout the evening to the local precinct, the hospital, and central booking. Though the dispute that precipitated the arrest was private, the response, including the arrest and the use of excessive force, was unquestionably action under color of law.

We have considered and rejected appellant's remaining contentions.

The judgment of the District Court is affirmed.

MILTON POLLACK, Senior District Judge: (Dissenting).

I respectfully dissent.

The majority opinion characterizes the procedure in the district court as impaired in critical respects affecting the jury's consideration of the case. However, there are too many defects to be cured to accept the result as serving the ends of justice.

In my opinion, the inadequacy and the inconsistency of the jury's responses cannot be overlooked or explained away successfully. The case was tried at a single trial on a single count complaint asserting a rolled-up liability of the defendant for various reasons scattered in the complaint but not differentiated into separate "counts." The predicate for a "guilty" finding of malicious prosecution and of violation of civil rights, namely, that the jury had found the absence of probable cause, was reported by the jury as not having been found (whether by disagreement, refusal or other failure is not known). The jury reported that it "cannot unanimously agree ... on the following counts [sic]: Assault, false arrest, excessive force."

There was no predicate reported to support the finding of "violation of civil rights." In paragraph "thirty-fifth" of the complaint, the plaintiff charged in one summary sentence that "[t]he above stated acts of assault, false arrest and imprisonment, and malicious prosecution were undertaken by Defendants Laporte and Colon under color of state law...."

In paragraph "thirty-ninth" of the complaint, the plaintiff asserted "[t]he above described acts of Defendants Laporte and Colon, committed under color of state law and under color of their authority as Correction Officers of Defendant City of New York, and with the implicit or tacit authorization, approval, or encouragement of the Correction Department and Defendant City of New York, were wanton, unprovoked, unlawful...." However, as mentioned below, evidence thereof was lacking.

The district judge gave a rolled-up charge covering all the asserted conduct as though it was all one tort and did not request or require separate verdicts. The jury indicated its confusion concerning its task. It asked "What are the specific charges?". The Judge repeated in substance the various claims of the complaint but added "excessive force" to the civil rights allegations which was not expressed in words in the complaint. The jury returned again and the same routine followed except this time "excessive force" was not reiterated by the Judge. The jury erroneously referred to the matters in their report as separate "counts," which they were not.

The declared inability, failure or refusal (whichever one chooses to believe) to find lack of probable cause for an arrest permeated and undermined all allegations of

the complaint. The charge of malicious prosecution cannot be sustained in limbo in the face of the announced failure of the jury to find lack of probable cause for an arrest, a prerequisite for the jury's response of guilty of malicious prosecution and guilty of violation of civil rights.[1] During its deliberations, the jury clearly requested the Court to "Please define malicious prosecution." The Judge then reread the portions of the charge that deal with malicious prosecution. The jury was instructed therein that:

> In order to recover, the plaintiff must prove that at the time the prosecution was initiated, defendant did not have probable cause to believe plaintiff guilty of assault in the third degree and harassment and that in initiating the prosecution the defendant acted maliciously. ... the fact that plaintiff was acquitted after trial is not evidence that defendant lacked probable cause at the time the prosecution was initiated, the question on the issue of probable cause is not whether plaintiff was, in fact, guilty or innocent or defendant was, in fact, mistaken or correct, but whether on the facts as they reasonably appeared to the defendant a reasonably prudent person would have believed the plaintiff guilty.

The civil rights claim cannot be sustained in limbo. The Court's charge was insufficient, and there was insufficient, indeed, none of the essential evidence as a foundation for such a claim. The double parking leading to the altercation was a personal gripe completely unrelated to any conceivable functions of a corrections officer in a parking lot matter, in that locality. Carrying of an off duty revolver does not necessarily impose color of state law status on defendant. Although the majority intimates that the dispute was private, they say "the arrest and the use of excessive force was unquestionably action under col-

or of law." The difficulty, however, is that a lawful arrest would not ground a civil rights claim, and there is no finding that it was other than lawful and it cannot be presumed to have been unlawful. Moreover, the jury expressly announced it was unable (or unwilling) to find that "excessive force" had been used; no other basis was submitted to the jury or is to be found in the evidence.

At a minimum, albeit in the absence of a formal request for a new trial, the guilty verdicts are irreconcilably inconsistent with the jury's announced failure to report, refusal or inability to find, lack of probable cause for defendant's acts. It would be a travesty on justice to allow the faulty structure on which the reported jury response stands; it is part of an appellate court's duty of oversight not to overlook or excuse such plain error. *United States v. Vater*, 259 F.2d 667, 672 (2d Cir.1958) ("Of course, where it is in the interest of justice, we will consider a point on appeal even though counsel through negligence or inadvertence has failed below to claim his client's strongest point."); *see also, Hormel v. Helvering*, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941) ("Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy."); *Ricard v. Birch*, 529 F.2d 214, 216 (4th Cir.1975) ("Ordinarily, of course, we do not pass on questions that were not presented to or considered by the district court, but orderly rules of procedure do not require sacrifice of the rules of fundamental justice."); *Franki Foundation Co. v. Alger–Rau & Assoc., Inc.*, 513

---

**1.** *See, Colon v. City of New York*, 60 N.Y.2d 78, 82, 455 N.E.2d 1248, 468 N.Y.S.2d 453, 455 (1983):

> The elements of an action for malicious prosecution are (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice [citations omitted];

2 *New York Pattern Jury Instructions—Civil,* PJI 3:50 at 795 (1968):

> In order to recover [for malicious prosecution], plaintiff must prove that at the time the prosecution was initiated, defendant did not have probable cause to believe plaintiff guilty of [the crime charged] and that in initiating the prosecution, defendant acted maliciously.

F.2d 581, 586 (3d Cir.1975) (Issues not raised below are ordinarily not heard on appeal, "[b]ut this rule is only a rule of practice and may be relaxed whenever the public interest or justice so warrants.").

I would order a new trial of this case on all issues. The limited new trial ordered by the district judge was insufficient relief.