**John J. PITCHELL, Plaintiff–Appellant,**

v.

**James F. CALLAN, Gregory Sargis and City of Hartford, Defendants–Appellees.**

**David J. Lesser and Steven Del Sole, Special Masters.**

**No. 591, Docket 93–7538.**

United States Court of Appeals, Second Circuit.

Argued Oct. 25, 1993.

Decided Jan. 3, 1994.

John R. Williams, New Haven, CT (Williams & Wise, of counsel), for plaintiff-appellant.

Stephen P. Fogerty, Hartford, CT (Mark A. Newcity, Halloran & Sage, of counsel), for defendant-appellee City of Hartford.

Frank H. Santoro, Hartford, CT (Danaher, Tedford, Lagnese & Neal, of counsel), for defendant-appellee Callan.

Henry C. Ide, Avon, CT, for defendant-appellee Sargis.

Before: VAN GRAAFEILAND and WINTER, Circuit Judges, and POLLACK, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

John Pitchell appeals from summary judgments of the United States District Court for the District of Connecticut (Covello, J.) the first of which dismissed Pitchell's 42 U.S.C. § 1983 claim and pendent state-law claim against the City of Hartford on the merits, and the second of which dismissed Pitchell's section 1983 claims against James Callan and Gregory Sargis on the merits and his pendent state-law claims against these two defendants by declining to retain pendent jurisdiction over the state-law claims. We affirm.

Most of the facts giving rise to plaintiff's action are not in dispute. On the night of June 18, 1987, Callan and Sargis, Hartford police officers, were on duty and in uniform. When their shifts ended at approximately midnight, they went to a local bar where they met plaintiff, John Pitchell, and a fourth individual, Fred Rodriguez. The men began drinking at the bar and, after the bar closed, went to Callan's apartment to continue drinking. Pitchell and Sargis were friends; however, Pitchell and Callan had met for the first time that evening.

While drinking at Callan's apartment, the men discussed a variety of topics including Vietnam, former President Kennedy, and the movie "Platoon". At approximately 3 a.m., Callan went into another room and emerged with a gun. He showed the gun to Sargis and Rodriguez, asking both men to confirm that the gun was loaded with real bullets, which they did. Callan then pointed the gun at Pitchell and, after stating "Now what did you say about Kennedy?", shot him, causing him permanent injury.

Although the gun Callan used was his own and was not authorized by the Hartford Police Department, the bullets were issued by the Department. Officer Sargis wore most of his uniform the entire evening, including his service revolver. Callan was in partial uniform at the bar but changed into civilian clothes when he reached his apartment.

The rules and regulations of the Hartford Police Department provide in pertinent part:

> Courage and alertness will be required of every member of the police force at all times whether on or off duty. When serious crimes are threatened, such as murders or attacks upon women, it is the duty of the policeman to go to the assistance of the victim for the purpose of preventing crime. If help from other police can be called without involving delay this should be done; under no circumstances should the officer wait for such help irrespective of the personal danger involved.

Callan was arrested and pled guilty to assault in the first degree. He was given a five-year suspended sentence and five years of probation. Pitchell thereafter filed suit against Callan, Sargis and the City of Hartford alleging: (1) a section 1983 violation by

* The Honorable Milton Pollack, Senior United States District Judge for the Southern District of New York, sitting by designation.

Callan and Sargis on the ground that both men, acting under color of law, deprived Pitchell of rights secured to him by the Fourth, Fifth and Fourteenth Amendments, the claim against Callan being based on the shooting, the claim against Sargis being based on his failure to attempt to prevent the shooting; (2) state-law negligence and willful misconduct on the part of both Callan and Sargis predicated on the same behavior; (3) a section 1983 violation by the City of Hartford on the ground that the municipality was consciously indifferent to the safety of its citizens in its screening, training and supervision of the officers; and (4) a state-law claim against the City on the ground it was liable for the torts of its two officers.

In April 1992, the City moved for summary judgment, asserting that it had no record of any inappropriate behavior by Callan or citizens' complaints against him, and that the officers were off-duty at the time of the incident. To refute the contention that Sargis and Callan were off-duty, Pitchell proffered evidence of the above-quoted police regulation and the affidavit of a former Chief of the Hartford Police Department stating it was his opinion, based on the rules and regulations of the Hartford Police Department, that, from the moment Callan picked up the gun, he was acting as a police officer and from the moment Callan began brandishing the gun, Sargis had all the duties and responsibilities of a police officer.

The district court granted the City's motion for summary judgment, holding that both Callan and Sargis were engaged in purely private pursuits at the time of the incident and therefore were not acting under color of law. In addition, the court held that Pitchell had failed to make a sufficient showing of deliberate indifference on the part of the City of Hartford. The court also granted summary judgment to the City on the state-law negligence claim, holding that "Callan had shown no abnormalities or personality traits incompatible with the duties of a police officer" and that his "acts were in no way related to his duties" as a Hartford police officer.

In early March of 1993, shortly before trial was to begin in the suit against the officers,

they also moved for summary judgment. Pitchell submitted the same evidence in opposition. Once again the court granted summary judgment on the section 1983 claims, concluding as it previously had that neither officer had acted under color of law. The court then declined to exercise its pendent jurisdiction over the state-law claims and stated, citing *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988), that: "It is axiomatic that when all federal claims are eliminated prior to trial, a court should decline to exercise jurisdiction over any remaining pendent state claims."

Pitchell contends that the district court erred in granting summary judgment in favor of both the City and its officers and that it abused its discretion in dismissing the pendent state claims on the "eve of trial." We reject these contentions.

On the appeal of a grant of summary judgment, this Court must conduct a *de novo* review of the record applying the same standard as did the district court. *Litton Industries, Inc. v. Lehman Brothers Kuhn Loeb Inc.,* 967 F.2d 742, 746 (2d Cir.1992). The appropriate inquiry for determining whether a grant of summary judgment is proper is whether there is a need for a trial. In other words, are there any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

In order to maintain a section 1983 action, two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Courts have had frequent occasion to interpret the term "color of law" for the purposes of section 1983 actions, and it is by now axiomatic that "under 'color'

of law means under 'pretense' of law" and that "acts of officers in the ambit of their personal pursuits are plainly excluded." *Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1945). However, while it is clear that "personal pursuits" of police officers do not give rise to section 1983 liability, there is no bright line test for distinguishing "personal pursuits" from activities taken under color of law.

More is required than a simple determination as to whether an officer was on or off duty when the challenged incident occurred. *See Rivera v. La Porte,* 896 F.2d 691, 695–96 (2d Cir.1990). For example, liability may be found where a police officer, albeit off-duty, nonetheless invokes the real or apparent power of the police department. *See id.; United States v. Tarpley,* 945 F.2d 806, 809 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1960, 118 L.Ed.2d 562 (1992); *Traver v. Meshriy,* 627 F.2d 934, 937–38 (9th Cir.1980). Liability also may exist where off-duty police officers perform duties prescribed generally for police officers. *See Stengel v. Belcher,* 522 F.2d 438, 441 (6th Cir.1975). In short, courts look to the nature of the officer's act, not simply his duty status. *See Revene v. Charles County Comm'rs,* 882 F.2d 870, 872 (4th Cir.1989).

■ In the instant case, neither Sargis nor Callan was acting under color of law. When Callan pointed his gun at Pitchell, he was not acting in accordance with a police regulation, as was the off-duty officer in *Stengel, supra,* nor was he invoking the authority of the police department as in the pretense of law cases. Callan was an off-duty cop, who while drunk in his own home, used his own personal weapon to shoot a guest. Although Callan violated the law, he did so as a private citizen, not as a state actor.

This Court addressed a somewhat similar situation in *Bonsignore v. City of New York,* 683 F.2d 635 (2d Cir.1982). In that case, which involved an off-duty policeman who shot his wife and then turned his gun on himself, we held that the officer, "who was off-duty when he shot his wife, was not acting under color of state law since his actions were not 'committed in the performance of any actual or pretended duty,' . . . but were

performed 'in the ambit of [his] personal pursuits.' " *Id.* at 639. The *Bonsignore* panel's focus on actual or pretended duty aptly synthesizes the color of law inquiry. When a similar inquiry is applied to the facts of the instant case, it is clear that neither Sargis' nor Callan's actions were "committed in the performance of any actual or pretended" duty and thus neither officer acted under color of law.

For other cases holding police officers' acts not violative of the Constitution, see:

*Delcambre v. Delcambre,* 635 F.2d 407 (5th Cir.1981) (Assault by police chief during family argument at police headquarters);

*Robinson v. Davis,* 447 F.2d 753 (4th Cir. 1971), *cert. denied,* 405 U.S. 979, 92 S.Ct. 1204, 31 L.Ed.2d 254 (1972) (College security officers who were also public police officers summoning plaintiffs to college investigation);

*Watkins v. Oaklawn Jockey Club,* 183 F.2d 440 (8th Cir.1950) (Off-duty police officer serving as a racetrack security officer evicting plaintiff from track premises);

*Perkins v. Rich,* 204 F.Supp. 98 (D.Del. 1962), *aff'd on opinion below,* 316 F.2d 236 (3d Cir.1963) (Police inspector signing complaint for arrest of plaintiff for making vulgar and obscene telephone calls to officer's home);

*Manning v. Jones,* 696 F.Supp. 1231 (S.D.Ind.1988) (Assault by off-duty officer during altercation following traffic dispute);

*Johnson v. Hackett,* 284 F.Supp. 933 (E.D.Penn.1968) (Police officer's derogatory remarks and offer to fight).

■ Pitchell does not rest his argument solely on the conduct of the two officers as it related to their actual or pretended authority. He makes the novel contention that the "police presence" in the apartment had a numbing effect on his defenses and that, while under different circumstances the moment a gun appeared he would have been on guard and possibly grabbed it or fled, in this situation he believed he would be protected. This argument erroneously centers on Pitchell's subjective reaction to Callan's conduct rather than the nature of Callan's and Sargis'

activity, and misses the essence of the color of law requirement and the protection afforded by section 1983. Unlike in a negligence action, the focus of inquiry in the instant case is not on the standard of care used by the officers but rather on whether there was an abuse or misuse of a power conferred upon them by state authority. If Callan was not acting with actual or pretended authority, he was not acting under color of law, and his actions were not state actions.

■ Pitchell contends that even if Callan was not liable under section 1983, Sargis still could be held liable for not attempting to stop Callan. Pitchell bases this contention on the above-quoted police department regulation, which requires police intervention when murder is threatened. Thus, Pitchell argues that when this threat occurred in the instant case, Sargis automatically assumed a duty status and was required to take affirmative action. The response to this contention is stated succinctly in *DeShaney v. Winnebago County Dep't of Social Serv.*, 489 U.S. 189, 197, 109 S.Ct. 998, 1004, 103 L.Ed.2d 249 (1989):

> As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

Because the district court correctly held that Callan was guilty of private violence only, *DeShaney* clearly applies.

Similar reasoning disposes of Pitchell's claim against the City of Hartford. If neither Callan nor Sargis inflicted a constitutional injury on Pitchell, "it is inconceivable that [the City] could be liable to [Pitchell]." *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986).

In summary, the constitutional amendments invoked by Pitchell merely provide that a citizen will be free from state interference with the rights and freedoms identified. Only if Callan acted on behalf of the state would Pitchell's constitutional rights be violated. If Callan did not violate Pitchell's constitutional rights, neither did Sargis.

■ Finally, we hold that the district court did not abuse its discretion in declining to exercise jurisdiction over the state-law claims shortly before trial. Pitchell correctly concedes that a district court's exercise of pendent jurisdiction is purely discretionary, and that plaintiffs, in general, have no "absolute right to have pendent state law claims decided under any circumstances, and certainly have no right to insist that the District Court retain jurisdiction of pendent state law claims after federal claims have been dismissed." App. Brief at 22. He contends, however, that the district court erred in assuming that it was required to dismiss the state claims once it dismissed the federal ones.

Pitchell's theory is unsupported by the district court opinion which correctly cited *Carnegie–Mellon University, supra,* 484 U.S. at 350, 108 S.Ct. at 619, and stated merely that it is axiomatic that a court should decline to exercise jurisdiction over state-law claims when it dismisses the federal claims prior to trial. Pitchell's contention also disregards the district court's specific recognition of its discretionary authority when, citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), it dismissed the federal claims against the City of Hartford on the merits and retained jurisdiction over the state-law claims for the purpose of making the same disposition of them.

We are not persuaded by Pitchell's argument that he is being prejudiced by the delay resulting from the necessary pursuit of his state-law claims in state court. As already stated, there is little, if any, dispute as to the facts, and little additional pretrial preparation will be required in state court. When Pitchell brought his state-law claims in federal court, he must have realized that the jurisdiction he invoked was pendent and possibly tentative. Under the circumstances, such delay as results from the loss of jurisdiction herein is not so egregious as to make the district court's action an abuse of discretion. *See Dunton v. County of Suffolk*, 729 F.2d 903, 910–11 (2d Cir.1984).

The judgments of the district court are affirmed.