**Esmail BANISAIED and Douglas Palomino, Plaintiffs,**

v.

**Dennis CLISHAM, Defendant.**

**No. 3:96 CV 1697(GLG).**

United States District Court, D. Connecticut.

Jan. 26, 1998.

John R. Williams, Williams, Polan & Pattis, New Haven, CT, for plaintiffs.

Elliot B. Spector, Christopher Arciero, Sack, Spector & Barrett, West Hartford, CT, Martin Leonard Caine, III, Caine & Caine, Naugatuck, CT, for Dennis Clisham.

Paul E. Pollock, Raymond J. Plouffe, Jr., Bai, Pollock & Coyne, Bridgeport, CT, Elliot B. Spector, Chrisopher Arciero, Sack, Spector & Barrett, West Hartford, CT, Martin Leonard Caine, III, Caine & Caine, Naugatuck, CT, for William Rado, Town of Naugatuck.

## MEMORANDUM DECISION

GOETTEL, District Judge.

Pursuant to Federal Rule of Civil Procedure 56, defendant, Dennis Clisham, moves for summary judgment. For the reasons discussed below, defendant's motion (**Document # 26**) is GRANTED.

## BACKGROUND

On or about July 20, 1996, plaintiffs, Esmail Banisaied and Douglas Palomino, and Banisaied's wife entered the Christoforo Columbo Hall ("Cafe") in Naugatuck. When they arrived, defendant was already present and was sitting at the bar. After a short time, defendant instigated a verbal argument with plaintiffs. Defendant and plaintiffs exchanged verbal insults and there was minor touching between the parties. The Cafe's proprietor, Thomas Boland, interrupted the altercation and plaintiffs left the Cafe soon thereafter.

Plaintiffs were not aware at any point during the incident that defendant was the Chief of Police of the Town of Naugatuck. At the time, defendant was off-duty and was not in police uniform. He also did not display a firearm that was visible to plaintiffs.

The following day, Banisaied scheduled a meeting with the Mayor of Naugatuck, William Rado, and defendant in order to formally complain about defendant's conduct. Before defendant arrived, Mayor Rado apologized for defendant's behavior. At the conclusion of the meeting, Banisaied approached defendant to discuss his concern

that he and Palomino would be stopped while driving in Naugatuck by police officers in retaliation of their complaint to the Mayor. According to plaintiffs, defendant gave them his business card and told them to show the card if they ever had problems with the police in Naugatuck.

Plaintiffs brought this action against Clisham, Mayor Rado, and the Town of Naugatuck for allegedly depriving them of their federally guaranteed rights in violation of 42 U.S.C. § 1983. Plaintiffs have conceded that their claims against the Town of Naugatuck and Mayor Rado should be dismissed. Thus, for purposes of this summary judgment motion, we consider only the claims against Clisham.

## DISCUSSION

A court may grant summary judgment only if it determines that there is no genuine issue of material fact based on a review of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). When ruling on a summary judgment motion, a court must construe the facts in a light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If there is no genuine issue of material fact, the moving party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ To state a claim under section 1983, a plaintiff must prove that the defendant, acting under the color of state law, deprived the plaintiff of a right secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). A person acts under the color of state law if he or she "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* 487 U.S. at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)). Additionally, action taken under the color of state law means conduct made under the pretense of law. *Screws v. United States*, 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) (plurality opinion); *see Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir.1994). Thus, conduct committed in the ambit of personal pursuits is excluded from the definition of color of state law. *Screws*, 325 U.S. at 111; *Pitchell*, 13 F.3d at 548.

■ When a police officer allegedly causes a deprivation of rights, courts have adopted a totality of the circumstances approach to determine if the officer was acting under the color of state law during the incident in question. *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir.), *cert. denied*, 516 U.S. 987, 116 S.Ct. 515, 133 L.Ed.2d 423 (1995); *Pitchell*, 13 F.3d at 548. Under this approach, a court should consider the police officer's duty status, the officer's garb, the location of the incident, the nature and circumstances of the officer's conduct, and the relationship of that conduct to the performance of the officer's official duties. *Martinez*, 54 F.3d at 986–87; *Pitchell*, 13 F.3d at 548. Additionally, for a police officer to act under the color of state law, there must be an actual or purported relationship between the officer's behavior and his duties as a police officer. *Roe v. Humke*, 128 F.3d 1213, 1216 (8th Cir.1997); *see Rivera v. La Porte*, 896 F.2d 691, 695–96 (2d Cir.1990) (finding that a corrections officer may be liable under section 1983 if he invokes the real or apparent power of the police department, even if he is off-duty).

■ During the incident with plaintiffs at the Cafe, we find that defendant was not acting under the color of state law because he was engaged in the pursuit of private interests. While defendant was at the Cafe, he was off-duty, dressed in civilian clothes, and did not display his firearm. At all times during the incident, plaintiffs did not know that defendant was Chief of Police. Additionally, defendant never stated that he

was a police officer or Chief of Police, nor did he show his police identification. Construing the facts in a light most favorable to plaintiffs, defendant instigated a verbal dispute with plaintiffs by using insulting and offensive language. The parties also engaged in minor touching. Defendant never threatened plaintiffs with arrest. Indeed, defendant never attempted to take any action related to the actual or pretended duties generally associated with his official position. *See Pitchell*, 13 F.3d at 548; *Bonsignore v. City of New York*, 683 F.2d 635, 639 (2d Cir.1982). As the court in *Martinez* stated, "[p]rivate violence—even private violence engaged in by one who happens to work for the state—has different legal ramifications than violence attributable to state action." 54 F.3d at 985. Thus, defendant never acted under the color of state law because he never purported to act in an official capacity or to exercise official responsibilities.

■ Plaintiffs argue that they were dissuaded from summoning police assistance at the time of the incident because they were told, in defendant's presence, that defendant was the Chief of Police. This assertion is not enough to establish a genuine issue of material fact as to whether defendant was acting under the color of state law. Plaintiffs concede that Boland, and not defendant, informed them of defendant's occupation. Also, there is no evidence to suggest that Boland was acting at defendant's behest or received significant assistance from defendant. *See Zemsky v. City of New York*, 821 F.2d 148, 151–52 (2d Cir.), *cert. denied*, 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987) (upholding the dismissal of section 1983 claims against two private defendants because the defendants had not acted in concert with nor received significant assistance from the municipal defendants). Thus, defendant's behavior did not constitute action taken under the color of state law because defendant did not prevent, through his conduct or the conduct of others, plaintiffs from reporting the incident.

■ Plaintiffs also argue that a material issue of fact exists as to whether defendant used his official capacity to protect himself from a criminal complaint arising out of the incident with plaintiffs. At the meeting with Mayor Rado on the day following the incident, plaintiffs allege that defendant offered them his business card which they could use in the future to avoid any problems with Naugatuck police officers. During this meeting, defendant was operating under the color of state law because he acted in conformity with his official capacity as Chief of Police. *See Screws*, 325 U.S. at 111 ("Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it."). Plaintiffs contend that defendant intended to dissuade plaintiffs from pursuing a criminal complaint against him by giving them his business card.

■ Assuming that plaintiffs were influenced by receiving defendant's business card, we find that plaintiffs were not deprived of a federally guaranteed right. As it relates to this claim, the complaint alleges a violation of plaintiffs' equal protection and substantive due process rights. Plaintiffs cannot support an equal protection claim because they do not assert any facts that identify other individuals who were similarly situated as themselves and received different treatment. *See Reed v. Reed*, 404 U.S. 71, 75–76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Plaintiffs also cannot sustain a substantive due process claim because they were not deprived of life, liberty, or property without due process of law. There is no support for the proposition that plaintiffs have a liberty interest in ensuring that defendant is punished for his conduct, however reprehensible it may seem. *See Albright v. Oliver*, 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (noting that the "protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity").

Moreover, plaintiffs do not aver that defendant, while acting in his capacity as Chief of Police, took action to prevent an investigation into his conduct. In *Monroe v. Pape*, the Supreme Court noted that Congress enacted section 1983 partially because state agencies, due to prejudice or intolerance, might deny some citizens the "enjoyment of rights, privi-

leges, and immunities guaranteed by the Fourteenth Amendment." 365 U.S. 167, 180, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled in part on other grounds by, Monell v. Department of Soc. Servs. of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiffs assert that they attempted to report defendant's behavior to the Naugatuck police department, but that the officer to whom they spoke refused to take the complaint. It must be defendant's own conduct, and not the conduct of others, that deprived plaintiffs of a federally guaranteed right. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED.

**SO ORDERED.**