JOHN J. PITCHELL *v.* JOHN R. WILLIAMS ET AL.
(AC 18169)

O'Connell, C. J., and Landau and Spear, Js.

Argued March 18—officially released November 2, 1999

*John C. Lewis III*, with whom, on the brief, was *Timothy Brignole*, for the appellant (plaintiff).

*Jane E. Stoddard*, with whom, on the brief, was *Anthony Nuzzo, Jr.*, for the appellees (defendants).

*Opinion*

SPEAR, J. The plaintiff, John J. Pitchell, appeals from the judgment rendered following the trial court's granting of the motion for summary judgment filed by the defendants, attorney John R. Williams and his present and former law firms,[1] on Pitchell's legal malpractice action. The court ruled that the malpractice action could succeed only if Pitchell could have successfully prosecuted a claim, pursuant to General Statutes § 7-465,[2] that an off duty Hartford police officer and the

---

[1] The defendants are John R. Williams, Williams & Wise and The Law Offices of John R. Williams. Pitchell retained Williams and the law firm of Williams & Wise to represent him for damages resulting from a shooting. During that representation, Williams & Wise was dissolved. Williams continued to represent Pitchell under the name Law Offices of John R. Williams.

[2] General Statutes § 7-465 (a) provides in relevant part: "Any town, city or borough . . . shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay . . . for damages awarded for infringement of any person's civil rights or for physical damages to person or property . . . if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the

city of Hartford were liable to Pitchell as a result of an incident in which another off duty Hartford police officer shot Pitchell. Williams, who had commenced an action in the United States District Court for the District of Connecticut (District Court) on behalf of Pitchell, had failed to assert such a claim. The trial court, however, concluded that the claim would necessarily have failed because the issue had been determined in the District Court action the defendants brought under 42 U.S.C. § 1983[3] as well as in the appeal from the District Court's decision to the United States Court of Appeals for the Second Circuit. See *Pitchell* v. *Callan*, 13 F.3d 545 (2d Cir. 1994). In rendering judgment, the District Court concluded, as a matter of law, that the off duty officer had not acted under "color of law" in failing to intercede to prevent another off duty officer from shooting Pitchell. *Pitchell* v. *Callan*, United States District Court, Civil No. H-89-73 (AVC) (D. Conn. January 6, 1993). On the basis of the federal court decisions, the trial court reasoned that Pitchell was collaterally estopped from claiming in this malpractice action that the off duty officer had acted within the scope of his employment and in the performance of his duties pursuant to § 7-465.

Pitchell asserts that the determination that the officer had not acted under "color of law" for purposes of 42 U.S.C. § 1983 is not the same as a determination regarding scope of employment and performance of

result of any wilful or wanton act of such employee in the discharge of such duty. . . ."

[3] Title 42 of the United States Code, § 1983, provides in relevant part. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

duty pursuant to § 7-465, and, therefore, the court improperly granted the defendants' motion for summary judgment on the ground of collateral estoppel. We reverse the judgment of the trial court.

The following relevant facts and procedural history are necessary to our resolution of Pitchell's claims. This appeal stems from a malpractice action against the defendants that arose out of their representation of Pitchell in the District Court. On June 19, 1987, Officers James F. Callan and Gregory Sargis ended their work shift at midnight and went to a bar, where they met Pitchell and another man named Fernando Rodriguez. The men drank at the bar and, after it closed, retired to Callan's residence, where they continued drinking. Although his shift had ended, Sargis was still wearing part of his police uniform and was carrying his badge and service revolver.[4] At approximately 3 a.m., Callan retrieved his .357 magnum revolver from another room in the house. He checked to see if the gun was loaded, then showed it to Sargis and Rodriguez and asked them to verify that it was loaded. Thereafter, while in the immediate presence of Sargis and Rodriguez, Callan pointed the loaded revolver at Pitchell and uttered threatening statements to him. Pitchell turned to Sargis and asked him for assistance, Sargis took no action to protect Pitchell or to stop Callan. Callan then shot Pitchell in the face, causing severe injury.

Thereafter, Pitchell retained Williams, who filed an action in the District Court on Pitchell's behalf against the city of Hartford (city), Callan and Sargis. The complaint, as summarized by the Second Circuit alleged: "(1) a section 1983 violation by Callan and Sargis on the ground that both men, acting under color of law,

---

[1] Callan also had finished his shift at midnight, but it does not appear from the record that he was wearing any part of his police uniform or badge at that point.

deprived Pitchell of rights secured to him by the Fourth, Fifth and Fourteenth Amendments, the claim against Callan being based on the shooting, the claim against Sargis being based on his failure to attempt to prevent the shooting; (2) state-law negligence and willful misconduct on the part of both Callan and Sargis predicated on the same behavior; (3) a section 1983 violation by the City of Hartford on the ground that the municipality was consciously indifferent to the safety of its citizens in its screening, training and supervision of the officers; and (4) a state-law claim against the City on the ground it was liable for the torts of its two officers." *Pitchell* v. *Callan*, supra, 13 F.3d 546–47.

The District Court granted the city's motion for summary judgment, ruling that the acts of Callan and Sargis were not committed under color of law and, therefore, the city had no vicarious liability under § 1983.

Callan and Sargis thereafter filed motions for summary judgment, which also were granted by the District Court. In its decision on the motions by Callan and Sargis the District Court reiterated its conclusion that Callan and Sargis were not acting in their official police capacity at the time of the shooting, but in their personal, private pursuits, which fall outside § 1983 liability. The Second Circuit affirmed the District Court's judgments. Id., 546.

Pitchell eventually retained new counsel who brought an action in the Superior Court against Callan, Sargis and the city. That action alleged that the city was liable to Pitchell pursuant to § 7-465. The city's motion for summary judgment on the § 7-465 claim was granted on the grounds of res judicata and the statute of limitations.

Pitchell then commenced the present action against the defendants for legal malpractice alleged to have arisen out of Williams' failure to assert the § 7-465 claim for Pitchell in the federal case. Pitchell set forth causes

of action sounding in negligence,[5] breach of warranty[6] and breach of contract.[7] The defendants filed a motion for summary judgment on the ground, inter alia, of collateral estoppel. The court granted the motion, ruling

[5] Count one of the operative complaint alleged that the defendants were negligent in one or more of the following respects: "(a) In that they failed to assert a state law claim against the city of Hartford pursuant to § 7-465 in the federal complaint, although they knew or should have known that such a claim was viable and existed in favor of [Pitchell] against the city of Hartford; (b) In that they failed to make any effort to amend the federal complaint to assert a § 7-465 claim against the city of Hartford at any time after the city of Hartford had moved for summary judgment in the federal action; (c) In that they failed to assert in opposition to the motion for summary judgment in the District Court or on appeal in the Second Circuit that a § 7-465 claim was in fact embodied in the federal complaint, thereby preserving the § 7-465 claim for subsequent state litigation; (d) In that they focused almost exclusively on potential civil rights claims of [Pitchell] to the exclusion of alternative theories of liability, including but not necessarily limited to the claim pursuant to § 7-465; (e) In that they failed to know and apply well settled principles of law; (f) In that they failed to plead alternative and available theories of recovery; (g) In that they failed to properly draft and review all pleadings, motions, orders and decisions; (h) In that they failed to possess and exhibit the requisite knowledge, skills and abilities to represent [Pitchell's] interests; (i) In that they engaged in conduct, acts and/or omissions below acceptable professional standards; and (j) In that they committed acts and/or omissions of professional negligence."

[6] Count two of the operative complaint alleges that the defendants breached implied and express warranties of competency in one or more of the following ways: "(a) In that they failed to advise [Pitchell] of the availability of personal injury attorneys who specialized in this type of civil personal injury litigation; (b) In that they failed to refer [Pitchell] to an attorney competent to handle this type of civil personal injury litigation; (c) In that they breached an express warranty of competence and skill to handle this type of civil personal injury litigation by telling [Pitchell] that they would file all existing claims that [Pitchell] had, whether state or federal claims, (d) In that they breached an implied warranty of competence and skill to handle this type of civil personal injury litigation by undertaking to file all the existing claims [Pitchell] had, whether state or federal claims, against the city of Hartford, Gregory Sargis and James Callan, and failing to do so."

[7] Count three of the operative complaint alleges that the defendants breached their contract as follows: "(a) In that they breached their contract to represent [Pitchell] in a skillful and competent manner by representing that they would file all existing claims that [Pitchell] had, whether state or federal claims, against the city of Hartford, Gregory Sargis, and James Callan, and failing to do so."

that "the issue whether the conduct of Callan and/or Sargis was within the scope of § 7-465 was effectively decided adversely to [Pitchell] in the federal case, and [Pitchell] is thereby collaterally estopped from relitigating that issue in this case." This appeal followed.[8]

Our standard of review of a trial court's decision to grant a motion for summary judgment is well established. "Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 744–45, 660 A.2d 810 (1995). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Id., 745. The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law; *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980); and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book § 381 [now § 17-46]. . . . *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 105, 639 A.2d 507 (1994)." (Internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 369–70, 727 A.2d 1245 (1999).

"Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . . For an issue to be subject to collateral estoppel,

---

[8] The only issue in this appeal is whether collateral estoppel applies to Sargis' status.

it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . . Furthermore, [t]o invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding." (Citation omitted; internal quotation marks omitted.) *Milford* v. *Andresakis*, 52 Conn. App. 454, 460–61, 726 A.2d 1170, cert. denied, 248 Conn. 922, 733 A.2d 845 (1999).

"An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . 1 Restatement (Second), Judgments § 27, comment (d) (1982). An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 11.19. If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta. 1 Restatement (Second), [supra, comment (h)]. . . . *Jackson* v. *R. G. Whipple, Inc.*, [225 Conn. 705, 714–15, 627 A.2d 374 (1993)]." (Internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, supra, 248 Conn. 374.

Here, the trial court concluded that the Second Circuit's determination that neither Sargis nor Callan was acting under color of law is "incompatible with holdings that either of them was 'acting in the performance of his duties and within the scope of his employment' when [Pitchell] was shot." We disagree.

The issue of whether the state trial court properly applied the doctrine of collateral estoppel to the § 7-465 claim turns on whether any decision regarding Sargis' duty status was necessary to the District Court

decision. Pitchell asserts that the District Court addressed only *Callan's* duty status and not Sargis' when it granted summary judgment in favor of the city. This claim is supported by the District Court's statement of the issues in its decision as: "(1) Whether *Callan's* acts were made under color of state law for purposes of § 1983 liability; (2) whether the City showed 'deliberate indifference' to the menace posed to the public by its police officers sufficient to justify § 1983 liability; and (3) whether the court should exercise pendent jurisdiction over the remaining state law negligence claim." (Emphasis added.) *Pitchell* v. *Callan,* supra, United States District Court, Civil No. H-89-73. Sargis' status is not mentioned as an issue.

The District Court, in granting summary judgment for the defendants in that case, held that "the acts of police officers in their personal, private pursuits fall outside of § 1983 liability." In support of this conclusion, the court cited *Bonsignore* v. *New York,* 683 F.2d 635 (2d Cir. 1982), in which an off duty officer shot his wife and then committed suicide. The Second Circuit determined in that case that the officer's actions "were not committed in the performance of any actual or pretended duty." (Internal quotation marks omitted.) Id., 639.

In affirming the District Court's decision in the case before us, the Second Circuit stated that "[i]f Callan did not violate Pitchell's constitutional rights, neither did Sargis." *Pitchell* v. *Callan,* supra, 13 F.3d 549. The court applied the rationale of *DeShaney* v. *Winnebago County Dept. of Social Services,* 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989), to Pitchell's claim that Sargis was "automatically" on duty and should have acted when Callan threatened Pitchell with a gun in Sargis' presence *Pitchell* v. *Callan,* supra, 549. Citing *DeShaney,* the Second Circuit held that the District Court had correctly found that Callan was guilty of only

private violence and that a state's "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Id.

In *Martinez* v. *Colon*, 54 F.3d 980, 987–88 (1st Cir. 1995), the United States Court of Appeals for the First Circuit concluded that on-looking police officers had no constitutional duty to protect a fellow officer from harm at the hands of another officer under the circumstances of that case. Summarizing *DeShaney*, the First Circuit stated that the "Due Process Clause ordinarily does not require the state to protect an individual's life, limb, or property against the marauding of third parties not acting on the state's behoof." Id., 984. "Private violence—even private violence engaged in by one who happens to work for the state—has different legal ramifications than violence attributable to state action." Id., 985. Thus, "when an on-duty police officer witnesses violence, the existence . . . of a constitutional duty to intervene will most often hinge on whether he is witnessing private violence or violence attributable to state action." Id., 986.

For § 1983 purposes, the determinative "color of law" factor with respect to a claim that a police officer should have intervened to protect a person from violence is not the officer's duty status, but rather, whether the violent act was private or public. Having determined that Callan's violent act was a private one, unrelated to his duty as an officer, the District Court had no need to consider whether Sargis was on duty or off duty, or whether he acted within the scope of his employment or performance of his duties.

In the federal action, the District Court was concerned with whether Callan was acting under color of law, which is the crux of a § 1983 action, and not with whether Sargis was on or off duty. When the District Court concluded, as a matter of law, that Callan was

not acting under color of law, its analysis stopped because, if Callan was not acting under color of law for purposes of a § 1983 constitutional rights violation, it follows, pursuant to *DeShaney*, that Sargis could not have been acting under color of law as a mere onlooker. It was, therefore, not necessary for the federal court to address the issue of whether Sargis was on or off duty. Consequently, collateral estoppel cannot apply to bar Pitchell from asserting this malpractice action based on Williams' failure to bring a § 7-465 claim in the federal action.

Whether Sargis was on or off duty is a material issue of fact the determination of which bears on whether Pitchell would have succeeded on a § 7-465 claim, had it been properly brought.[9] See *Palmieri* v. *Winnick*, 40 Conn. Sup. 144, 482 A.2d 1229 (1984), aff'd, 10 Conn. App. 18, 521 A.2d 210 (1987). The granting of the defendants' motion for summary judgment was, therefore, improper.

---

[9] See *Thurman* v. *Torrington*, 595 F. Sup. 1521 (D. Conn. 1984), citing *Gonzalez* v. *Doe*, 476 F.2d 680 (2d Cir. 1973), which discussed a District Court's analysis of a § 1983 claim and the court's refusal to exercise pendent jurisdiction over the plaintiff's § 7-465 claim: "[T]here is no reason to assume that, if necessary, the state courts would not grant full faith and credit to any judgment obtained against the municipal officials in the federal court. . . . [I]f the City should contest its obligation to pay any judgment rendered against its employees, the issues of whether they were acting in the performance of [their] duties and within the scope of [their] employment and whether the damage was the result of any wilful or wanton act would likely be raised. Those issues concern the interpretation of a state statute and the Supreme Court reminded us in [*United Mine Workers of America* v. *Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218 (1966)] that [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. . . . Moreover, to the extent that the standards to be applied and the proof required to meet them in order to render the City liable under the state statute differ from the standards and proof required to render individual defendants liable under § 1983, any jury which might be empanelled would be subject to confusion which it would be best to avoid." (Citation omitted; internal quotation marks omitted.) *Thurman* v. *Torrington*, supra, 1531.

The judgment is reversed and the case is remanded with direction to deny the motion for summary judgment to the extent that it is based on collateral estoppel[10] and for further proceedings according to law.

In this opinion the other judges concurred.

[10] The defendants' motion for summary judgment was based on collateral estoppel and a statute of limitations defense. In granting the motion for summary judgment, the court did not address the defendants' statute of limitations defense.