**Jeb S. FRIES, Plaintiff-Appellant,**

v.

**Dr. James BARNES, Dr. Kang Foo Kim, John A. Kohler, Police Chief, Town of Hanover Police Department, and Unknown Employees of Lake Shore Intercommunity Hospital, Defendants-Appellees.**

**No. 705, Docket 79–2219.**

United States Court of Appeals, Second Circuit.

Argued Feb. 8, 1980.

Decided April 10, 1980.

Thomas J. Moloney, New York City, for plaintiff-appellant.

Morley C. Townsend, Buffalo, N. Y. (Townsend & Townsend, Buffalo, N. Y., of counsel), for defendant-appellee John A. Kohler.

Before WATERMAN and MANSFIELD, Circuit Judges, and WEINSTEIN, District Judge.*

MANSFIELD, Circuit Judge:

A district court is empowered by 28 U.S.C. § 1915(d) to dismiss *sua sponte* a pro se civil rights complaint as frivolous on its face, *Boag v. Boies,* 455 F.2d 467 (9th Cir.), *cert. denied,* 408 U.S. 926, 92 S.Ct. 2509, 33 L.Ed.2d 338 (1972); *Urbano v. Sondern,* 41 F.R.D. 355 (D.Conn.1966), *aff'd,* 370 F.2d 13, 14 (2d Cir.), *cert. denied,* 386 U.S. 1034, 87 S.Ct. 1485, 18 L.Ed.2d 596 (1967); *United States ex rel. Masucci v. Follette,* 272 F.Supp. 563 (S.D.N.Y.1967). Nevertheless, we have repeatedly cautioned against use of this procedure where the complaint, which must be construed liberally in favor of the pro se plaintiff, *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), alleges facts amounting to a violation of 42 U.S.C. § 1983 (as distinguished from mere conclusions), the adverse party has not been served, and we do not have the benefit of the defendants' answering papers. *Lewis v. New York,* 547 F.2d 4 (2d Cir. 1976); *Cunningham v. Ward,* 546 F.2d 481 (2d Cir. 1976); *Burgin v. Henderson,* 536 F.2d 501, 502 n.1 (2d Cir. 1976); *Frankos v. LaVallee,* 535 F.2d 1346, 1347 n.1 (2d Cir. 1976); *Mawhinney v. Henderson,* 542 F.2d 1, 2 n.1 (2d Cir. 1976). This is a good example of a case where *sua sponte* dismissal of such a complaint appears to have been premature, calling once again for restraint in the exercise of this power.

Jeb S. Fries, a state prisoner incarcerated at the Attica state correctional facility, appeals from an order of the District Court for the Western District of New York entered by Chief Judge John T. Curtin *sua sponte* dismissing Fries' action under 42 U.S.C. § 1983 as frivolous on the day it was filed and before any answer, motion or other response from the defendants. For the reasons indicated below, we reverse.

The complaint, which must be taken as true for present purposes, alleges that on April 18, 1975, Fries, accompanied by a friend, admitted himself to the emergency room of Lake Shore Intercommunity Hospital in Irving, New York, for treatment of a gunshot wound he had suffered in his thigh. Employees in the emergency room called the Hanover Police Department as required by N.Y. Penal Law § 265.25.[1] Two officers

---

\* Of the United States District Court for the Eastern District of New York, sitting by designation.

1. N.Y. Penal Law § 265.25 provides in pertinent part:

"Every case of a bullet wound, gunshot wound, powder burn or any other injury arising from or caused by the discharge of a gun or firearm, . . . shall be reported at once to the police authorities of the city, town or village where the person reporting is located by: (a) the physician attending or treating the case; or (b) the manager, superintendent or other person in charge, whenever such case is treated in a hospital, sanatorium or other institution. Failure to make such a report is a class A misdemeanor."

arrived at the hospital where they questioned Fries until he lost consciousness, as a result of loss of blood or administration of drugs by hospital doctors.

While Fries was unconscious his wound was treated by defendants Barnes and Kim, a surgeon and anesthesiologist respectively, employed by the hospital. Without Fries' consent, Barnes, Kim and other unnamed hospital employees, turned over surgically-removed shotgun fragments, tissue and blood, as well as Fries' clothing and personal effects to the police at the request of defendant Kohler, Chief of the Town of Hanover Police. The complaint alleges that the defendants acted under color of state law, in violation of Fries' constitutional rights, and in concert, cooperation and conspiracy with each other. Fries was not arrested until the following day. Fries further alleges that the taking of the foregoing evidence amounted to an unreasonable search and seizure, taken under color of state law without any search warrant having been issued. Declaratory relief, compensation and punitive damages are sought.

Judge Curtin dismissed the complaint as frivolous on the grounds that "there is no indication that Drs. Barnes and Kim acted in any capacity other than that of private physicians . . . thus no indication that they were acting at any time under color of state law." "[T]here does not appear to have been a 'search and seizure,'" since Fries "voluntarily admitted himself for medical treatment," and there is no indication "that Drs. Barnes and Kim conspired with police officers to lure plaintiff to the hospital and thereby to remove his clothing and other effects to aid in a police investigation."

■ On this appeal Fries contends that his pro se complaint, construed liberally in his favor, states a claim under 42 U.S.C. § 1983. We agree. It is beyond dispute that the complaint alleged the wrongful taking of Fries' blood, clothing and personal effects without his consent or any lawful authorization. The taking, as alleged, clearly amounted to a warrantless "search and seizure" if carried out at the instance of the police. The critical question is whether sufficient state action is alleged to invoke relief under § 1983. We hold that there is.

In *Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the Supreme Court held that a § 1983 claim may be proved by showing that a person acting under color of state law (in that case a city policeman) collaborated or conspired with a private person (there a lunch-counter waitress) to deprive the plaintiff of a constitutional right (in that case the right to receive equal treatment and service in a place of public accommodation), stating:

"The involvement of a state official in such a conspiracy plainly provides the state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights, whether or not the actions of the police were officially authorized, or lawful; *Monroe v. Pape*, 365 U.S. 167 [81 S.Ct. 473, 5 L.Ed.2d 492] (1961); see *United States v. Classic*, 313 U.S. 299, 326 [61 S.Ct. 1031, 85 L.Ed. 1368] (1941); *Screws v. United States*, 325 U.S. 91, 107–111 [65 S.Ct. 1031, 89 L.Ed. 1495] (1945); *Williams v. United States*, 341 U.S. 97, 99–100 [71 S.Ct. 576, 95 L.Ed. 774] (1951). Moreover, a private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983. 'Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents,' *United States v. Price*, 383 U.S. 787, 794 [86 S.Ct. 1152, 16 L.Ed.2d 267] (1966)." [Footnote omitted] *Id.* at 152, 90 S.Ct. at 1605.

The police officer or government agent may not escape responsibility by claiming that the violation of the plaintiff's rights was committed by the private person involved in such a collaborative undertaking. As the court stated in *United States v. Mekjian*, 505 F.2d 1320, 1327 (5th Cir. 1975):

"Accordingly, where federal officials actively participate in a search being conducted by private parties or else stand by watching with approval as the search continues, federal authorities are clearly implicated in the search and it must comport with fourth amendment requirements."

Applying these principles here, the complaint was sufficient to withstand a dismissal on its face. The allegation that the police officers acted under state law is not controverted. Although the complaint does not allege in detail a conspiracy between the police and hospital employees who removed and turned over Fries' property to the police, it does allege that the "employees . . . acting under color of State law, aided and abetted the other Defendants in the concerted action that Plaintiff contends deprived him of his constitutional rights" (Par. 12), that the police "aided and abetted the other Defendants, and . . . directed the concerted action that Plaintiff contends deprived him of his constitutional rights" (Par. 14), that the employees "in acting to help the Town of Hanover Police to gather evidence . . . were acting under color of State law . . . requiring complicity with the Town of Hanover Police Department's wishes in conducting an investigation," (Par. 16), that the defendants "in concert acted to deprive Plaintiff of rights secured to him under the United States Constitution," (Par. 22), that all defendants "conspired to seize property and effects of Plaintiff, as well as personal bodily effects indigenous to Plaintiff's body, contrary to his wishes, while he was in a helpless condition, and before he had been lawfully arrested," (Par. 23). These allegations meet the test laid down by *Adickes*, and are inconsistent with the district court's mistaken impression that there was no allegation of a conspiracy between the police and doctor.

Since the allegations of conspiracy require reversal, it is unnecessary to discuss the other jurisdictional grounds urged by Fries, except to note that our silence is not to be construed as implying that any of them have merit.

The order of the district court is reversed and the case remanded for further proceedings.