**Eliezer WAHHAB, and Amehra Brown, Plaintiffs,**

v.

**The CITY OF NEW YORK, New York City Police Officers Samuel Rushing, Shield # 6377 and David E. Martin, Shield # 88157, the Gallery at Fulton St., LLC, Top Potato Plus Corp., Theodore Priftakis, Individually and as Owner/Manager of Top Potato Plus Corp., Cannady Security Co., Henry Cannady, Individually and as Owner of Cannady Security Co., Security Guard Jovan Rouse, and Security Guards Doe One Through Five, not yet identified, Defendants.**

No. 02 Civ. 0851(CBM).

United States District Court, S.D. New York.

Feb. 10, 2005.

Daniel Matthew Perez, George David Washtel, Ronald Laurence Kuby, Daniel Kuby & Perez, LLP, New York City, for Plaintiffs.

Howard S. Shafer, David Adam Glazer, Smith Mazure Director Wilkens Young Yagerman & Tarallo, P.C., New York City, for Defendants.

## OPINION

MOTLEY, District Judge.

## I. BACKGROUND

### A. Introduction

Plaintiffs Eliezer Wahhab and Amehra Brown claims that Wahhab was assaulted by security guards while they and their family were at a restaurant in the food court of a shopping mall. After an altercation arose between Wahhab and the restaurant manager over food quality, security guards, some of whom were off-duty police officers and some of whom were civilian guards responded. Wahhab alleges that he was forced to accompany the guards to a security room toward the rear of the mall, where he was severely beaten and suffered injuries including a shattered jaw. Plaintiffs filed suit against the restaurant, its manager, various security guards, the guards' security company, the security company's owner, the mall, and the City of New York.

## B. Procedural History

Eliezer Wahhab and Amehra Brown filed this action against the above-named defendants on February 4, 2002. On April 2, 2004, The Gallery at Fulton St., LLC, ("Gallery," also hereinafter referring to the shopping mall itself), owner of the shopping mall where the incident occurred, joined issue with the complaint, requesting a jury trial and asserting cross-claims against The City of New York ("City" or "City of New York"), Samuel Rushing ("Rushing"), Top Potato Plus ("Top Potato"), Theodore Priftakis ("Priftakis"), Cannady Security Co. ("Cannady Security"), Henry Cannady ("Cannady"), and Jovan Rouse ("Rouse"). Top Potato is the restaurant in the food court of the Gallery where the altercation took place between plaintiff Wahhab and defendant Priftakis, manager of Top Potato. Cannady Security is the employer of the civilian and off-duty security guards at the mall, Cannady being the owner of Cannady Security.

Top Potato and Priftakis answered the complaint on April 4, 2002. The City of New York responded with its Answer to the Complaint on July 11, 2002.

This case was transferred from Judge Batts to the undersigned in July 2002. The matter was placed on the suspense calendar from September 28, 2002 until November 22, 2002, while the criminal charges against plaintiff Wahhab were resolved. Thereafter, an Amended Complaint was filed by plaintiffs on December 23, 2002, which added New York City Police Officer David E. Martin ("Martin"), Shield # 88157 as a defendant.

Cannady Security, Cannady, and Rouse answered the amended complaint on January 13, 2003. Top Potato and Priftakis filed an answer to the amended complaint on March 3, 2003. On March 28, 2003, The City of New York filed an answer to the amended complaint. All defendants then moved for summary judgment, and on May 20, 2004, defendants Priftakis and Top Potato were dismissed by Stipulation.

## C. Facts

The incident leading to the present action occurred in the afternoon of October 8, 2001 at The Gallery at Fulton Street, a shopping mall in Brooklyn. Plaintiffs Eliezer Wahhab and Amehra Brown, along with one or two of their children, were at the Top Potato concession stand in the food court of The Gallery at Fulton Street.[1] Wahhab and Top Potato Manager Theodore Priftakis became involved in a quarrel concerning unsatisfactory food and soft drinks. Wahhab requested but was denied a refund, and, upset with the service, knocked a container of straws off a counter and onto the floor.

Virtually all of the facts that follow are in dispute. Plaintiffs claim that as Wahhab was preparing to leave, defendants Rushing and Martin, who were off-duty police officers moonlighting as security guards at the Gallery, appeared. "One of them showed a badge of some sort" and bumped chests with Wahhab, blocking his path. (Wahhab Dep. at 26–27). They were in plainclothes on the date of this incident. Plaintiffs allege that when Wahhab requested them to identify themselves and leave him alone, the response was less than conciliatory: "We have a smart ass here.... You're not going anywhere." (Wahhab Dep. at 28). Defendant Rushing, though, testified in his deposition that he identified himself to Wahhab by stating "I'm from security" and that Wahhab did not ask Rushing or Martin to identify

---

1. Plaintiffs claim they had two children with them, whereas defendants testified there was only one child present. This fact is irrelevant to a determination of the issues presented here.

themselves. (Rushing Dep. at 125–26). Jovan Rouse ("Rouse"), lead security guard present at the time, gave corroborating testimony averring that Rushing and Martin identified themselves as mall security. (Rouse Dep. at 44).

Defendants' version of the initial encounter between plaintiff Wahhab and defendants Rushing, Martin, and other security personnel begins with a call from Top Potato management to security, to which Rouse responded. (Rouse Dep. at 28). Rouse was apparently the first to address Wahhab, although from what can be gleaned from the record Rouse, Rushing, and Martin arrived on the scene nearly simultaneously. Defendants allege that Rouse approached Wahhab and asked him to step aside to speak with him. *Id.* at 39. Wahhab allegedly answered: "[F]uck you and fuck security." *Id.* Rouse maintains that he clarified to Wahhab that he was not intending to be disrespectful and assured Wahhab that he was in no "trouble" but that he must "sign a paper not to come back to the mall," which stated that if were to return, he would be treated as a trespasser. *Id.* Defendants maintain that Wahhab responded once again with obscenities. *Id.* Rouse then decided to call and wait for the undercover security and stepped back from Wahhab to allow them to handle the situation. *Id.* at 41.

According to the depositions of Rushing and Martin, they each received a transmission over mall-issued radios requesting assistance in the food court from "red coats," or off-duty police officers. (Rushing Dep. at 112–13; Martin Dep. at 51–52). As Martin reached the food court, he observed that all the people in the food court were standing still, indicating to him that a serious incident had occurred. (Martin Dep. at 55). Rushing heard "yelling and screaming" coming from Wahhab and Top Potato manager Priftakis, who said, "Get that guy, get that guy, he just threw a bottle at me," pointing at Wahhab.[2] (Rushing Dep. at 117–19).

Defendants allege that directly thereafter, Martin noticed other individuals, whether patrons or employees, gesturing towards Wahhab. (Martin Dep. at 56–59). Martin, who was the first undercover security guard to address Wahhab, approached Wahhab and inquired as to what the problem was. Wahhab allegedly replied "I have to go, I have to go." (Martin Dep. at 60–66). Rushing avers that he then arrived, walked up to Wahhab and said, "Calm down, calm down, we don't know what happened. You're yelling, screaming and swearing. I need to know what's going on, calm down." (Rushing Dep. at 124). Wahhab answered "Get the fuck out of my face. I don't want to talk to you. Fuck you, fuck everybody. Get out of here."[3] (Rushing Dep. at 124).

Rushing alleges that he told Wahhab he needed to "go in the back with [them]," referring to a security office separated from the public area. (Rushing Dep. at 126–27). According to defendants, when three or four more security guards then joined Rushing and Martin, including Rouse (who was in the immediate vicinity), at which time Wahhab voluntarily accompanied the group to the security office in the back of the mall. (Martin Dep. at 66–69).

Plaintiffs, in contrast, allege that Wahhab was repeatedly pushed "hard" in the direction of the security office. (Wahhab

---

**2.** Rouse testified that he had observed liquid dripping off Priftakis' face, referring to the beverage that Wahhab had thrown at Priftakis. (Rouse Dep. at 31).

**3.** The court notes that this version of the exchange is somewhat inconsistent with the testimony of Martin. The statement "I have to go, I have to go," is at odds with Wahhab's alleged response to Rushing's initial inquiry.

Dep. at 30, 37). Just inside the security office door, Wahhab heard plaintiff Amehra Brown's voice and noticed that she was being blocked from entering the security office by one of the security guards. (Wahhab Dep. at 45, 53–54). Wahhab allegedly turned around and asked that she be allowed to enter, at which point Rushing allegedly punched Wahhab in the face and put him in a headlock. (Wahhab Dep. at 45). As Wahhab was attempting to pry Rushing's arms from around his neck, Rushing allegedly stated, "Now you're under arrest, asshole, you just assaulted a police officer."[4] (Wahhab Dep. at 46). Rushing and several officers then allegedly forced Wahhab to the ground, punching and kicking him in the process, immobilizing his arms behind him, and repeatedly stating, "You're going to jail." (Wahhab Dep. at 57).

Defendants also claim that Wahhab was punched, but only once, and relate a different set of circumstances giving rise to the blow. Rouse alleges that he was struck by Wahhab "in the back of the neck, shoulder area" as the group was entering the security office. (Rouse Dep. at 48–49). It was then that Rushing and Martin allegedly grabbed Wahhab and, with Rouse's assistance, brought Wahhab to the ground. (Rouse Dep. at 52, 56). Rouse alleges that at that time Wahhab was again instructed that he was in no trouble, would not go to jail, and that all that was required of him was to sign a paper stating he would not come back to the mall. (Rouse Dep. at 58, 60). Wahhab was allegedly then seated on a two-seated couch in the security office, while Martin went to an adjacent room to find handcuffs. According to Rushing, Rushing turned his back to Wahhab, and despite the earlier assurances that Wah-

hab was "in no trouble," began to call 911 to request Wahhab's arrest. (Rushing Dep. at 135–137). Rouse, the only other person then in the room with Rushing and Wahhab, was facing Rushing. (Rouse Dep. at 62–63). Rushing alleges that while Wahhab was seated on the couch, Wahhab became more and more irate, stating, "I don't care if you guys got guns. I have guns. I'll come back here. I will do this." (Rushing Dep. at 144). As Rushing was attempting to dial 911 and simultaneously turning back around to face Wahhab, Wahhab jumped from his seat and struck Rushing in the shoulder and neck, breaking the chain that held Rushing's badge. (Rushing Dep. at 147–48). Rushing instantly returned the blow, connecting with Wahhab's jaw. *Id.* Rushing alleges that he then left the room.[5] (Rushing Dep. at 151–53). Soon thereafter, uniformed police officers arrived and Rushing gave an account of the crime he witnessed. (Rushing Dep. at 154). Wahhab was arrested and taken to Kings County Hospital.

Plaintiffs' account of this episode differs dramatically from defendants' version. Plaintiffs allege that while seated on the couch in the security office, and after being told to "shut up" and that he was "going to jail," Wahhab stated, "But you think that I should be intimidated by you because you have a badge and a gun? Just because you have a badge and a gun doesn't mean that people should live in fear. You're not the only person I know that has a gun." (Wahhab Dep. at 66–67). Enraged at this, Rushing retaliated, "Are you threatening me? Are you threatening me?" and proceeded to grab Wahhab, push his head into the couch so the left side of his face was exposed, and sit on top of him to prevent his moving. (Wahhab Dep. at 67–68).

---

**4.** It is unclear whether Rushing stated "police officer," or "officer." *See* Wahhab Dep. at 46, 58–60.

**5.** Rouse alleges that Rushing and Martin held Wahhab down until the police arrived. (Rouse Dep. at 64, 66–67).

Wahhab alleges that he was then struck in the face and body repeatedly, and then bodily thrown, several times, into another room. (Wahhab Dep. at 70–73). Just after the beating, Wahhab, wavering in and out of consciousness, maintains he heard someone say, "Let's say he's not a cop. Let's say he's a security officer." (Wahhab Dep. at 78).

Wahhab alleges that he spent five days in the hospital, where surgery was performed to re-attach his left jaw back to the side of his face and to pin his jaw together in the middle where it had been broken in two. (Wahhab Dep. at 84–85). He alleges that he has had three surgical procedures since then, one to remove the wiring and pins from his jaw, another to re-open the wound because of an infection, and another to have a root canal because of damage to his teeth. (Wahhab Dep. at 86, 90). Other conditions Wahhab attributes to the incident in question are sharp pains in his left shoulder, numbness in his chin and lip, biting his lip when he speaks, loss of sensation in the left side of his neck, loose teeth, two broken teeth, and diminished eyesight. (Wahhab Dep. at 94–95).

Plaintiffs assert twelve claims in total, including deprivations of civil rights for unreasonable search and seizure and excessive force, assault and battery, intentional, reckless and negligent infliction of mental and emotional pain, false arrest, kidnapping, negligent hiring, screening, retention, supervision and training, willful, reckless, and negligent misrepresentation, and respondeat superior liability.

Three motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 are now before the court, one from defendant City of New York, one from defendants Gallery, Rushing and Martin, and one from defendants Cannady Security, Cannady, and Rouse. For the reasons set forth below, this court grants in part and denies in part defendant City of New York's summary judgment motion, grants in part and denies in part defendants Gallery, Rushing and Martin's summary judgment motion, and grants in part and denies in part defendants Cannady Security, Cannady and Rouse's summary judgment motion.

## II. DISCUSSION

### A. Standard of Review on Summary Judgment

According to Fed.R.Civ.P. 56(c), summary judgment "shall be rendered forthwith" if it is shown that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 n. 4, 106 S.Ct. 2548, 2552 n. 4, 91 L.Ed.2d 265 (1986). "[G]enuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, [while] materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *Mitchell v. Washingtonville Cent. Sch. Dist.,* 190 F.3d 1, 5 (2d Cir.1999) (internal quotations and citations omitted). In order to prove that a genuine issue of material fact exists, a plaintiff "may not rest upon the mere allegations or denials of the pleadings," but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "Conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996).

Courts must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 164 F.3d 736, 742 (2d Cir.1998). The moving party bears the initial burden of demonstrating an absence of genuine is-

sues of material fact. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). If the initial burden is met, the non-moving party "must produce specific facts indicating that a genuine issue of fact exists. If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Scotto* v. *Almenas*, 143 F.3d 105, 114 (2d Cir.1998) (internal quotations and citations omitted) (alteration in original).

## B. City of New York

### 1. Policy or Custom under the Monell Doctrine

Defendant City of New York moves this court to grant summary judgment in its favor, arguing that plaintiffs have not proffered evidence showing that a custom or policy of the City caused the alleged deprivation of plaintiffs' civil rights.

It is well settled that in a 42 U.S.C. § 1983 suit a municipality may not be held liable on a theory of respondeat superior. *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, a municipality may be liable for damages under section 1983 "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury...." *Monell*, 436 U.S. at 694, 98 S.Ct. 2018. The plaintiff alleging constitutional harm attributable to a municipality under § 1983 "must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (italics in original).

■ There are four situations in which a municipality can be held liable under 42 U.S.C. § 1983:(1) an officially promulgated policy endorsed or ordered by the munici-pality, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); (2) a custom or practice that is so pervasive and widespread that the municipality had either actual or constructive knowledge of it, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); (3) actions taken or decisions made by the municipal employee who, as a matter of state law, is responsible for establishing municipal policies with respect to the area in which the action is taken, *McMillian v. Monroe County*, 520 U.S. 781, 117 S.Ct. 1734, 1736, 138 L.Ed.2d 1 (1997); *Praprotnik*, 485 U.S. at 129–30, 108 S.Ct. 915, 99 L.Ed.2d 107; *Pembaur*, 475 U.S. at 480–83, 106 S.Ct. 1292, 89 L.Ed.2d 452; or (4) where the failure of the municipality to train its employees rises to the level of deliberate indifference to the constitutional rights of others, *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Walker v. City of New York*, 974 F.2d at 297. Plaintiffs' allegations of the liability on the part of the City fall under the second and fourth bases. (Am. Compl. at 12). The court addresses each of these in turn.

■ Under the second basis, causation may be found where a municipal policy-maker's " 'acquiescence in a longstanding practice or custom ... constitutes the "standard operating procedure" of the local governmental entity.' " *Jeffes v. Barnes*, 208 F.3d 49, 61–62 (2d Cir.2000) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 485, 106 S.Ct. 1292, 1301, 89 L.Ed.2d 452 (1986) (plurality opinion) (White, J., concurring))). Here, an act performed pursuant to custom, although not formally approved, " 'is

so widespread as to have the force of law.'" *Jeffes,* 208 F.3d at 61–62 (quoting *Brown,* 520 U.S. at 404, 117 S.Ct. 1382). In *Sorlucco v. New York City Police Department,* 971 F.2d 864, 871 (2d Cir.1992), the court found that the municipality was liable because the injurious conduct of the lower echelon employees was so manifest as to have been "constructive[ly] acquiesce[d]" in by higher-ranking policymakers. *Id.*

To bolster plaintiffs' claim, plaintiffs reference reports and statistical information that suggests a widespread pattern of police misconduct. Specifically, in plaintiffs' Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment, plaintiffs cite the *Commission to Investigate Allegations of Police Corruption and the Anti–Corruption Procedures of the Police Department,* known commonly as the "Mollen Commission Report," which describes a New York City Police Department ("NYPD") policy of reacting to officer misconduct with "tolerance or willful blindness." *See* Pl.'s Mem. Opp. Summ. J. at 9. Plaintiffs also refer to statistical information obtained from the Civil Complaint Review Board's 2002 Annual Report, which reveals that in 2000, one year before the incident in question, 4, 113 complaints alleging misconduct were filed against New York City police officers, of which 233 were recommended for discipline. *See* Pl.'s Mem. Opp. Summ. J. at 9. In 2001, 203 disciplinary penalties were imposed by the New York City Police Department, only one of which received termination, and only one of which received a suspension of 31 days or more or loss of vacation plus a one-year probation. *Id.* at 10. Between 1999 and 2001, a total of 13,171 complaints were filed, resulting in the termination of five officers and two others receiving penalties greater than suspension for 30 days with probation for one year. *Id.* Lastly, plaintiffs state that defendant Rushing has been accused of mis-

conduct in various forms four times during the years 1998 to 2000, including use of an ethnic slur, stealing money during a stop and frisk, unjustifiable use of force, and improper threats of force and arrest.

Plaintiffs claim that the lack of discipline with regard to complaints issued against Rushing as well as the rest of the department, together with the conclusions of the Mollen Commission Report regarding lack of discipline, could have permitted defendant Rushing to believe that his actions denying plaintiff Wahhab his civil rights would go unpunished.

In accordance with the liberal pleading requirements of the Federal Rules of Civil Procedure, a "plaintiff is not required to 'state or establish' exactly the policy by which he alleges the defendants violated his rights, nor is he required to plead more than a single instance of misconduct." *Simpkins v. Bellevue Hosp.,* 832 F.Supp. 69, 73–74 (S.D.N.Y.1993). In *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) the Court held that § 1983 complaints should not be held to a "heightened pleading standard" beyond what is required generally by Fed.R.Civ.P. 8(a). *Simpkins,* 832 F.Supp. at 73–74. Although a complaint may assert "conclusorily the existence of a policy without allegations of fact beyond the single incident alleged in the complaint," *Simpkins v. Bellevue Hosp.,* 832 F.Supp. 69, 74 n. 3 (S.D.N.Y.1993) (citations omitted) plaintiffs here have alleged statistical evidence that along with the incident alleged and prior complaints against a particular defendant, raises a material question of fact regarding an NYPD policy or custom of acquiescence in unconstitutional conduct. Therefore, defendant City of New York's motion for summary judgement on the claim that a custom or policy

of the City caused the alleged deprivation of plaintiffs' civil rights is denied.

### 2. *Negligent Hiring, Screening, Retention, Supervision and Training*

Defendant City of New York argues that plaintiffs cannot establish a prima facie case of negligent hiring, screening, retention, supervision and training against the City, because Rushing and Martin were not working as NYPD officers at the time of the events at issue here. City of New York submits in support of this contention that Rushing and Martin were off duty working as mall security guards, they were in plain clothes, they were using mall-issued radios, and they acted in response to a call from a fellow member of mall security. Def.'s Mem. Supp. Summ. J. at 13.

The City of New York's argument here is precluded by the conclusions reached in other sections of this opinion which do not relieve the City from liability for the actions of defendants Rushing and Martin. It has yet to be established whether defendants Rushing and Martin acted under color of law. Therefore, the question of whether defendant City may be liable for their negligent hiring, screening, retention, supervision and training is unresolved, and the City therefore is not entitled to summary judgment on this issue.

### 3. *False Arrest*

Defendant City of New York asserts that plaintiff Wahhab's false arrest claim should be dismissed because the uniformed NYPD officers who responded to the 911 call had probable cause to arrest him. Plaintiffs' false arrest claim is alleged against the City of New York as well as individual defendants, including Rushing and Martin. Consequently, the City of New York is potentially subject to liability in both possible arrest scenarios, either by means of actions of the uniformed officers in effecting an arrest on Mr. Wahhab, or via Rushing and Martin's actions in initially detaining and allegedly arresting Wahhab.

A § 1983 claim for false arrest derives from the right to be free from unreasonable search and seizure, including the right to be free from arrest absent probable cause. *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996). The law of the forum state controls the elements of a § 1983 false arrest claim. *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995). Under New York law, a plaintiff must show that (1) the defendant intentionally confined the plaintiff, (2) the plaintiff was aware of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not justified or privileged. *Hall v. City of White Plains,* 185 F.Supp.2d 293, 299 (S.D.N.Y.2002).

"There can be no federal civil rights claim for false arrest where the arresting officer had probable cause." *Singer,* 63 F.3d at 118 (citing *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir. 1994)). Accordingly, probable cause is a complete defense to an action for false arrest. *Jocks v. Tavernier,* 316 F.3d 128, 134–35 (2d Cir.2003). Probable cause is established "when the arresting officer has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *O'Neill v. Town of Babylon,* 986 F.2d 646, 650 (2d Cir.1993) (quoting *Calamia v. City of New York,* 879 F.2d 1025, 1032 (2d Cir.1989)). The focus with regard to probable cause is not on certitude, but the likelihood of criminal activity. *See Illinois v. Gates,* 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The establishment of probable

cause requires a fact-based determination that considers the "totality of the circumstances." *Gates*, 462 U.S. at 232 n. 7, 103 S.Ct. 2317.

Probable cause will generally be found to exist when an officer is advised of a crime by a victim or an eyewitness. *Russell v. Eighty Fourth Precinct*, 2004 WL 2504646, *3, 2004 U.S. Dist. LEXIS 22546, *7–8 (S.D.N.Y.2004) (citing *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir.2000); *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir.2001)). Where there is no dispute as to the knowledge of the officers, whether probable cause existed may be determined as a matter of law. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996). Here, with regard to the uniformed NYPD officers' arrest of Wahhab, the facts are not in dispute as to the information upon which the uniformed officers acted. Plaintiffs' complaint alleges that Wahhab was "[a]rrested by other police officers who were called in." (Pls.' Am. Compl. at 1–2). The uniformed officers came on the scene in response to a 911 call placed by defendant Security Guard Jovan Rouse who reported an "emergency going at [sic] ... the Galleria...." (Rouse Dep. at 66). Upon the officers' arrival, Rushing reported to them that a crime had been committed and gave a brief description of the altercation that had occurred. (Rushing Dep. at 153–55). The court finds this information, which was before the uniformed officers, sufficient to warrant a person of reasonable caution in the belief that a crime had been committed. Therefore, the court concludes that the uniformed NYPD officers had probable cause to arrest Wahhab, and plaintiffs' false arrest claim arising out of the uniformed officers' arrest of Wahhab is dismissed.

As to the alleged arrest by Rushing and Marin, plaintiffs state a claim as to the first three elements. According to Wahhab, he was intentionally confined upon first contact with defendants Rushing and Martin. Wahhab alleges that he was aware of this confinement and did not consent because he requested to be left alone. The last element, however, is determinative. Reading the facts in the light most favorable to the plaintiff, the information upon which Rushing and Martin acted was a call to the food court area of the Gallery requesting assistance; there was an altercation between Priftakis and Wahhab, who became agitated and knocked straws off a Top Potato counter. The court finds that a person of reasonable caution would be warranted in the belief that an offense had been committed based on these facts. Therefore, defendant City of New York's motion for summary judgment as to the alleged false arrest of plaintiff Wahhab by defendants Rushing and Martin is granted.

### 4. Under Color of Law

For liability to attach to defendant City of New York on plaintiffs' § 1983 claims, Rushing and Martin must have acted under color of law. *Pitchell v. Callan*, 13 F.3d 545, 547–48 (2d Cir.1994). It is axiomatic that "color" of law means "pretense" of law, and additionally that "acts of officers in the ambit of their personal pursuits are plainly excluded." *Id.* (quoting *Screws v. United States*, 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945)). The Court of Appeals in *Pitchell*, which is cited by both plaintiffs and defendants in their submissions, explained that although there is no bright line test for distinguishing personal pursuits from actions under color of law, more is required than the simple determination of whether the officer was on or off duty at the time of the contested actions. *Pitchell*, 13 F.3d at 547–48 (citing *Rivera v. La Porte*, 896 F.2d 691, 695–96 (2d Cir.1990)). Liability may exist where an off-duty officer invokes the real or apparent power of the police department, or

performs duties prescribed generally for police officers. *Id.* (citations omitted).

For guidance in its analysis, *Pitchell* cited *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir.1975), in which an off-duty police officer shot three men, killing two and paralyzing a third in a barfight. *Stengel*, 522 F.2d at 439–40. A jury found Belcher guilty, implicitly finding that Belcher acted under color of state law at the time of the incident. *Id.* at 440–41. There were several facts supportive of this finding. "The chemical mace which Belcher sprayed was issued to him by the Columbus police department. Belcher carried his pistol pursuant to a regulation of the police department which required off-duty officers to carry pistols as well as mace at all times." *Id.* There was also evidence that permitted the inference that Belcher intervened in the dispute pursuant to a duty imposed by police department regulations, such as the former police chief's testimony that Belcher acted under the authority of regulations requiring an officer to take action "in any type of police or criminal activity 24 hours a day," and a letter from the Director of the Department of Public Safety which closed the inquiry of the Police Firearms Board of Inquiry by exonerating Belcher because his actions were "in the line of duty." *Id.* The Sixth Circuit affirmed. 522 F.2d 438.

In *Pitchell,* defendant police officers Callan and Sargis went to a bar after their shifts ended at midnight on June 18, 1987 and began drinking with Pitchell and another individual. When the bar closed, they went to Callan's apartment to continue drinking. At approximately 3:00 a.m., after discussion on a variety of topics, Callan went into another room and emerged with a gun, which he then used to shoot and seriously injure Pitchell because of something Pitchell said about former President Kennedy. *Pitchell*, 13 F.3d at 546. The court concluded that the defendants

were not acting under color of law. Callan was not "acting in accordance with police regulation, as was the off-duty officer in *Stengel* . . . nor was he invoking the authority of the police department. . . ." *Id.* He was an off-duty cop, "who while drunk in his own home, used his own personal weapon to shoot a guest." *Id.*

In *Manning v. Jones,* 696 F.Supp. 1231, 1235 (S.D.Ind.1988), also cited by *Pitchell,* the court outlined facts to be weighed when determining whether a party acted under color of law. They included: whether defendants identified themselves as police officers at any time during the incident; if plaintiff was aware that the defendants were police officers; whether defendants detained or questioned the plaintiff in the line of duty or scope of employment as police officers; if defendants drew a firearm or arrested the plaintiff; whether defendants were engaged in any investigation or any aspect of the traditional public safety functions of police work. *Id.* 696 F.Supp. at 1235. There, the court found that the fact that the altercation arose out of a personal matter in which the defendants were not acting in the performance of their duties militated against a finding that the defendants were acting under color of law.

The facts upon which a resolution of this issue in the instant case must rely are in conflict. For example, it is disputed whether Rushing or Martin identified themselves as police officers, whether by stating so, by showing identification, or otherwise indicating. Plaintiffs claim that Rushing or Martin "flashed his badge" upon approaching Wahhab at Top Potato. (Pls.' Mem. Opp. Summ. J. at 2). Contrarily, defendants maintain that neither Rushing nor Martin identified themselves as police officers, and Rushing introduced himself as being from security. (Defs.' Mot. Summ. J. at 3, 6). Defendants state

that a "badge of some sort" was shown to Wahhab, while Wahhab could not recall any details regarding the badge, but had seen security guards wearing shields. (Defs.' Mot. Summ. J. at 2). Further, it is not evident at this point whether there was a NYPD regulation in place requiring twenty-four hour duty.

The use of handcuffs is also disputed. Plaintiff Wahhab contends his arms were "mechanically immobilized behind him," while Rushing alleges that he had no handcuffs on him, but normally did, and had handcuffed persons at the Gallery mall in the past. (Pls.' Affirm. Opp. Summ. J. at 5). It is also disputed whether Wahhab was physically seized and transported from the food court to the security room, from the floor outside the security room to the couch in the security room, or to an adjacent room by being thrown, or whether he went voluntarily during the incident. The parties likewise disagree over whether Rushing and Martin engaged in any investigation. Plaintiffs claim two men in plain clothes "bumped chests" with Wahhab, asking "What's the problem?" (Pls.' Am. Compl. at 8). In response to Wahhab's attempt to ascertain their identities, Wahhab alleges that the men "grasp[ed] him about the body and ... propel[led] him toward the food court exit." (Pls.' Am. Compl. at 8). Rushing alleges in his deposition, however, that he merely attempted to calm Wahhab down, and indicated his desire to "find out what happened." (Rushing Dep. at 125).

The case *Lizardo v. Denny's, Inc.*, 2000 WL 976808, 2000 U.S. Dist. LEXIS 9785 (S.D.N.Y.2000) is instructive. There, an off-duty officer working for a Denny's restaurant was found to have acted under color of law when he threatened to arrest the plaintiff for disorderly conduct. The

relevant factors analyzed by the court in *Lizardo* were similar to those in each of the above cases.[6] The court stated that "[a]n officer can purport to exercise official authority by 'flashing a badge, identifying [himself] as [an] officer, placing an individual under arrest, or intervening in a dispute involving others pursuant to a duty imposed by ... department regulations.'" *Lizardo*, 2000 WL 976808, *9, 2000 U.S. Dist. LEXIS 9785, at *37–38, (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3d Cir.1994); *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir.1994)). In *Lizardo*, similar to Wahhab's claim that Rushing told Wahhab he was under arrest for assaulting a police officer, "[i]n the course of escorting [the plaintiff] from the Restaurant, [the off-duty officer] threatened to arrest him for disorderly conduct. [The officer] possessed that power under state law." *Lizardo*, 2000 WL 976808, at *10, 2000 U.S. Dist. LEXIS, at *41–42. The court concluded that "[b]ecause the officer threatened to invoke his official authority to arrest [the plaintiff], a reasonable jury could find that [the officers] purported to act pursuant to their official duties at the time of the incident." *Id.* (citing *Pitchell*, 13 F.3d at 548).

Considering the foregoing in the light most favorable to the non-movant, because Rushing threatened to invoke his official authority, and the additional relevant factors dispute, such as whether the off-duty officers identified themselves in any manner, whether they carried or used handcuffs, whether plaintiff was aware that the defendants were police officers, and whether defendants engaged in any investigation, the court finds that defendants have not met their burden of establishing that there is no genuine issue of material fact

---

**6.** *Lizardo* cites *Pitchell* with regard to determinative factors, as do both plaintiffs and defendants here. *See Lizardo*, 2000 WL 976808, at *8–9, 2000 U.S. Dist. LEXIS 9785, at *37–39.

such that they are entitled to judgment as a matter of law. Accordingly, the City of New York's motion for summary judgment on this issue is denied.

### 5. Respondeat Superior

■ New York law holds employers liable where the employee acts in furtherance of the employer's business and the employer was or could have been exercising some control, either directly or indirectly, over the employee's activities. *Mahmood v. City of New York et al.*, 2003 WL 21047728, *3, 2003 U.S. Dist. LEXIS 7745, *8 (S.D.N.Y.2003) (citing *Turk v. McCarthy*, 661 F.Supp. 1526, 1535 (E.D.N.Y.1987)).

■ The City of New York argues that because Rushing and Martin were not acting under color of law, liability under respondeat superior is precluded. (Def.'s Mem. Supp. Summ. J. at 9). This statement is inaccurate because although similar factual questions are involved, the inquiries are distinct, and a plaintiff may proceed on state law claims even though § 1983 claims under *Monell* may be barred. *Webster v. City of New York*, 333 F.Supp.2d 184, 207 (S.D.N.Y.2004). As the court in *Mahmood* held, "The fact that a police officer uses, or abuses, his authority may be relevant in deciding whether he was acting under color of state law. It is not relevant, however, in determining whether the actions taken were within the scope of his employment." *Mahmood*, 2003 WL 21047728, at *3, 2003 U.S. Dist. LEXIS 7745, at *10–11.

■ The rules concerning scope of employment dictate that "where an employee's conduct is brought on by a matter wholly personal in nature, the source of which is not job-related, his actions cannot be said to fall within the scope of his employment." *Id.* (quoting *Stavitz v. City of New York*, 98 A.D.2d 529, 471 N.Y.S.2d 272, 274 (1st Dep't 1984)). In *Mahmood*,

plaintiff Mahmood, while stopped behind off-duty officer Thomas Fitzgibbon at a red light, honked his horn to alert Fitzgibbon when the light turned green. *Id.* at 2003 WL 21047728, at *1, 2003 U.S. Dist. LEXIS 7745, at *3. Fitzgibbon then exited his vehicle, approached Mahmood's vehicle and attempted to punch Mahmood through the open driver's side window. *Id.* After ordering Mahmood to pull over, which he did, Fitzgibbon proceeded to pull Mahmood from his vehicle and assault, yell at, and beat him. *Id.* Mahmood argued that Fitzgibbon was acting in the scope of his employment as an officer when he verbally identified himself as a police officer, showed plaintiff his badge, and ordered him to pull over to the side of the road. *Id.* at 2003 WL 21047728, at *3, 2003 U.S. Dist. LEXIS 7745, at *10. The court stated, however, that the officer's identification "does not, by itself, establish that he was furthering the City's interest in maintaining law and order." *Id.* at 2003 WL 21047728, at *3, 2003 U.S. Dist. LEXIS 7735, at *10–11 (citations omitted). *Mahmood* quotes *Perez v. City of New York*, No. 94 Civ.2061, 1996 WL 103836, at *1, 1996 U.S. Dist. LEXIS 2812, at *3 (S.D.N.Y.1996) for this proposition, which further illustrates that "[t]he act of identifying oneself as a police officer, producing a shield, and executing an arrest, because one's employment with the City confers the authority to do so, does not automatically create liability for the City." *Perez*, 1996 WL 103836, at *3, 1996 U.S. Dist. LEXIS 2812, at *6–7. The *Mahmood* court concluded that Fitzgibbon acted out of personal rage and that the city could therefore not be vicariously liable. *Id.* at 2003 WL 21047728, at *3–4, 2003 U.S. Dist. LEXIS 2812, at *13–14.

■ *Woo v. City of New York*, No. 93 Civ. 7007, 1996 WL 457337, 1996 U.S. Dist. LEXIS 11689 (S.D.N.Y.1996), a case relied

upon by plaintiff in *Mahmood* and which the court in *Mahmood* distinguished, is more closely aligned with the circumstances in the present matter. *Mahmood,* 2003 WL 21047728, at *4 n. 7, 2003 U.S. Dist. LEXIS, at *14 n. 7. In *Woo,* plaintiff Woo and an off-duty police officer had an altercation stemming from a traffic confrontation. *Woo,* 1996 WL 457337, at *1, 1996 U.S. Dist. LEXIS 11689, at *5. The officer claimed to have been hit with a tire iron by Woo, while Woo claimed to have brandished the tire iron in fear and was hit in the eye with a pistol by the officer. *Id.* at 1996 WL 457337, *2–3, 1996 U.S. Dist. LEXIS 11689, *7–8. The court in *Woo* denied summary judgment to defendant City and found that whether the officer acted within the scope of his employment was a disputed fact better left for the jury. *Id.* at 1996 WL 457337, *12, 1996 U.S. Dist. LEXIS 11689, *38–39. *Mahmood* distinguished *Woo* because, as with the present matter, several underlying facts were in dispute. *Mahmood,* 2003 WL 21047728, at *4 n. 7, 2003 U.S. Dist. LEX-IS, at *14 n. 7. For exámple, "[t]here is conflicting factual evidence as to: who started the incident, whether Woo or defendant [the officer] violated traffic regulations, whether Woo assaulted [the officer] with a tire iron and whether [the officer] identified himself as a police officer." *Woo,* 1996 WL 457337, at *12, 1996 U.S. Dist. LEXIS 11689, at *38. Here, similar facts are in dispute, such as who started the incident spurring the alleged assault on Wahhab and whether Rushing and Martin identified themselves as officers and in what manner. *Mahmood* also pointed to the fact that the plaintiff in *Woo* was subsequently arrested for assault after uniformed police officers arrived on the scene, as is the case here. *Mahmood,* 2003 WL 21047728, at *4 n. 7, 2003 U.S. Dist. LEXIS 7735, at *14 n. 7.

This court finds that material factual issues involved in this inquiry are in dis-

pute. Accordingly, defendant City of New York's motion for summary judgment as to plaintiffs' respondeat superior claim is denied.

### 6. Plaintiffs' Exhibits C and D

Defendant City of New York objects to plaintiffs' Exhibits C and D on the grounds that they are not in compliance with Rule 56 of the Federal Rules of Civil Procedure, as they are not "followed by citation to evidence which would be admissible." (Def. City's Reply Mem. Supp. Summ. J. at 3 n. 1). Although these documents may be admissible at trial pursuant to Federal Rule of Evidence 803(8)(C), "[d]ocuments must be properly authenticated in order to be considered by the court at summary judgment stage," and that they may be authenticated later in trial is irrelevant. *Barlow v. Connecticut,* 319 F.Supp.2d 250, 257 (D.Conn.2004) (citing *Dedyo v. Baker Eng'g N.Y., Inc.,* 1998 WL 9376, *4, 1998 U.S. Dist. LEXIS 132, *12–13 (S.D.N.Y. 1998); 11 James Wm. Moore et al., Moore's Federal Practice P 56.14[4][a] (3d ed.1997)). The documents in question are not sworn, they do not contain an affirmation indicating the truth of their contents, nor do they assert a basis in personal knowledge. *Barlow,* at 257–58 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158, n. 17, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Beyah v. Coughlin,* 789 F.2d 986, 989–90 (2d Cir.1986)). Therefore, Plaintiffs' Exhibits C and D do not qualify as evidentiary proof in admissible form. Consequently, they will not be considered by this court in this summary judgment ruling.

### 7. The Infant Children

■ Defendant City of New York moves for denial of plaintiffs' request to amend the complaint to state claims by Brown and Wahhab's infant children. Al-

though leave to amend "shall be freely given when justice so requires," Fed. R.Civ.P. 15(a), it is within the discretion of the court to deny a request to amend for the proper reasons, one of which is futility of amendment. *Celebrity Cruises, Inc. v. Essef Corp.*, 2004 WL 2591950, *1–2, 2004 U.S. Dist. LEXIS 23058, *4–6 (S.D.N.Y. 2004) (citations omitted). Here the requested amendment would be futile because New York law does not recognize a cause of action for loss of parental consortium. *Chaiken v. VV Publishing Corp.*, 1992 WL 168282 at *1, 1992 U.S. Dist. LEXIS 9740 at *2–3 (S.D.N.Y.1992) (citing *DeAngelis v. Lutheran Medical Center*, 84 A.D.2d 17, 445 N.Y.S.2d 188 (2d Dep't 1981), *aff'd*, 58 N.Y.2d 1053, 462 N.Y.S.2d 626, 449 N.E.2d 406 (1983)). Accordingly, plaintiffs' request to amend the complaint in this manner is denied.

### 8. Acquittal in Contemplation of Dismissal

The City of New York submits in a footnote of its Memorandum Supporting Summary Judgment that "there can be no malicious prosecution claim arising from plaintiff Wahhab's arrest because he took an ACD, and a malicious prosecution claim will not survive such a disposition." (Def.'s Mem. Supp. Summ. J. at 6). This argument must be disregarded because plaintiffs have not claimed malicious prosecution.

In summary, defendant City of New York's motion for summary judgment on the issues of policy or custom, negligent supervision, color of law, and respondeat superior are denied. The City of New York's motion for summary judgment on the issue of false arrest is granted. The City of New York's motion to deny plaintiffs' request to amend the complaint to state claims by Brown and Wahhab's infant children is also granted.

## C. Gallery, Rushing and Martin

### 1. Amehra Brown

 Defendants move for summary judgment as to plaintiff Amehra Brown's claim for loss of support, help, comfort, and society. This motion is granted. Amehra Brown is not married to Eliezer Wahhab and as much is conceded by plaintiffs. Pls.' Mem. Opp. Summ. J. at 15. Moreover, assuming they were married, § 1983 does not support derivative claims for loss of consortium. *Pritzker v. City of Hudson*, 26 F.Supp.2d 433, 442–33 (S.D.N.Y.1998).

### 2. Under Color of Law

Defendants Gallery, Rushing and Martin contend that plaintiffs' causes of action under § 1983 must fail because Rushing and Martin were not acting under color of law, and that this also precludes liability of the Gallery, which is a private entity. This issue is discussed above. Pursuant to the court's conclusion with respect to defendant City of New York, the motion is denied.

### 3. Intentional Infliction of Emotional Distress

Defendants Gallery, Rushing and Martin argue that plaintiffs' emotional distress claims are subsumed by plaintiffs' assault and battery claims, citing *Bender v. City of New York*, 78 F.3d 787 (1996). In *Bender*, the jury granted duplicative awards allowing Bender to recover for the same injury under separate causes of action. *Id.* at 793. The Second Circuit held that:

[A]t least part of the injury she suffered from the false arrest for assault—loss of liberty—is part of the injury she suffered from the intentional infliction of emotional distress. Similarly, at least part of the injury she suffered from the battery—emotional pain and suffering—

is part of the injury she suffered from the emotional injury tort.

*Id.* at 793. The court suggested language for a jury instruction that might prevent duplicative awards: "Any damage award for the emotional distress claim must be limited to the component of injury you find sustained for this claim, if any, over and above whatever emotional distress you have already compensated by your awards for other claims." *Id.* at 794.

Citing *Bender,* defendants Gallery, Rushing and Martin declare that "when a plaintiff alleges a separate claim based on intentional tort, any claim for intentional infliction of emotional distress must be dismissed." (Defs.' Mem. Supp. Summ. J. at 7). Unfortunately for defendants Gallery, Rushing and Martin, *Bender* does not stand for this proposition. *Bender* did not hold that the emotional distress award was wholly duplicative, and expressly acknowledged the district court's suggestion that "the tort of inflicting emotional distress in the context of a false arrest or a malicious prosecution possibly involves some component of damages over and above the damages that may be awarded for these police misconduct torts." 78 F.3d at 793. A reasonable jury (possibly following a similar instruction to the one suggested above) could return a verdict including a component of damages for emotional distress that is over and above those awarded for other alleged torts. Paralleling this sentiment, plaintiff argues defendants' conduct was extreme and outrageous and "well exceeds the ambit of traditional assault and battery." This is sufficient to meet the non-movant's burden. Defendants' motion is accordingly denied.

### 4. Acquittal in Contemplation of Dismissal

 Citing no legal precedent, defendants Gallery, Rushing and Martin argue that by accepting an adjournment in contemplation of dismissal ("ACD"), Wahhab has lost his right to claim false arrest. (Defs.' Mem. Supp. Summ. J. at 9). A plaintiff's acceptance of an ACD in New York does not bar a false arrest claim (but will prevent a claim of malicious prosecution). *Wedderburn v. City of New York,* 2000 WL 1877100, *1, 2000 U.S. Dist. LEXIS 18514, *3–4 (S.D.N.Y.2000). Therefore, this aspect of defendants Gallery, Rushing and Martin's motion is denied.

### 5. False Arrest

In accordance with the above discussion, defendants' Gallery, Rushing and Martin's motion for summary judgment on plaintiffs' false arrest claim is granted.

### 6. Negligent Hiring, Screening, Retention, Supervision and Training of Gallery

 Defendants Gallery, Rushing and Martin claim that plaintiffs cannot establish a prima facie case for negligent hiring, screening, retention, supervision and training. Liability for this cause attaches "only when the employer knew or should have known of the employee's violent propensities." *Yeboah v. Snapple, Inc.,* 286 A.D.2d 204, 205, 729 N.Y.S.2d 32, 33 (1st Dep't 2001) (citing *Detone v. Bullit Courier Serv.,* 140 A.D.2d 278, 528 N.Y.S.2d 575, 576 (1st Dep't 1988) *lv. denied* 73 N.Y.2d 702, 537 N.Y.S.2d 490, 534 N.E.2d 328). Plaintiffs refute this claim by parsing defendants' motion into negligent supervision and training as opposed to negligent hiring and retention. This is unpersuasive because the defense of notice remains applicable. Moreover, plaintiffs have not met their burden in proving the existence of triable facts on this issue. Plaintiffs proffer no evidence indicating defendant Gallery had notice of violent propensities of Rushing and Martin. Therefore, plaintiffs negligent supervision claim as to defen-

dants Gallery, Rushing and Martin is dismissed.

### 7. Plaintiffs' Exhibits C and D

Defendants Gallery, Rushing and Martin also object to Plaintiffs' Exhibits C and D on the same grounds as defendant City of New York, i.e., that they are not in compliance with Rule 56 of the Federal Rules of Civil Procedure. In accordance with the above explanation, the exhibits are not considered for purposes of this motion because they do not qualify as evidentiary proof in admissible form.

Summarizing, defendants Gallery, Rushing, and Martin's motion to dismiss the derivative claim of plaintiff Amehra Brown and plaintiffs' claim of negligent hiring, screening, retention, supervision, and training on the part of defendant Gallery is granted. Summary judgment is granted to Defendants Gallery, Rushing, and Martin as to plaintiffs' false arrest claim and denied as to the issue of whether Rushing and Martin were acting under color of law. Defendants Gallery, Rushing, and Martin's motion to dismiss plaintiffs' claim of intentional infliction of emotional distress is denied.

### D. Cannady Security, Cannady, Rouse

#### 1. Amehra Brown and the Infant Children

Defendants Cannady Security, Cannady, and Rouse move for summary judgment on the issue of plaintiff Amehra Brown's derivative claim in the same fashion as the other defendants to this action. Pursuant to the above discussions, the motion is granted.

#### 2. Defendant Rouse

Defendants Cannady Security, Cannady, and Rouse assert that plaintiffs cannot prove a prima facie case in assault, battery, or intentional infliction of emotional distress by defendant Rouse, because

Rouse had limited contact with Wahhab and because plaintiffs did not specifically identify Rouse. (Defs.Mem.Supp.Summ. J.). Plaintiffs counter that Rouse acted in collaboration with state actors Rushing and Martin in detaining Wahhab and subjecting him to excessive force, giving rise to the civil rights claims. (Pls.' Mem. Opp. Summ. J. at 13). Defendants rejoin that a conspiracy did not exist because there was no agreement between Rouse and Martin and Rushing. (Defs.' Reply Mem. Supp. Summ. J. at 1–2.).

■ The applicable case law makes clear that conspiracy per se is not a requirement of liability of a private actor for civil wrongs of this sort. *Fries v. Barnes,* 618 F.2d 988, 990–91 (2d Cir.1980). A "collaborative undertaking," or "joint activity" will suffice. *Id.* (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Mekjian,* 505 F.2d 1320 (5th Cir.1975)). To the extent Rouse along with other civilian security guards acted in concert with Rushing and Martin to deprive Wahhab of his civil rights, he may be liable. *Fries,* 618 F.2d at 990–91. The extent of Rouse's and other security guards' involvement is contested. For example, Rouse claims he was the only other person in the security office aside from Rushing. (Rouse Dep. at 63). Since Wahhab alleges that he was beaten by more than one person, Rouse is included in that group of assailants. Wahhab further testified that he was physically pushed toward the security office and then forced to the ground and punched and kicked in the process by all involved. According to Rouse's own testimony, Rouse was present throughout those episodes. Summary judgment on the causes of action asserted against Rouse is not appropriate because questions of fact remain here that would allow a reasonable jury to find for the nonmoving party. Therefore, defen-

dants Cannady Security, Cannady, and Rouse's motion for summary judgment as to the plaintiffs' claims asserted against defendant Rouse is denied.

### 3. Under Color of Law

Defendants Cannady Security, Cannady, and Rouse submit that plaintiffs' first, second and fourth causes of actions are precluded because Rouse, Rushing and Martin were not acting under color of state law. In accordance with the relevant discussion of this issue above, this motion is denied.

### 4. False Arrest

Pursuant to the discussions above, summary judgment is granted as to the arrest by the uniformed police officers. Insofar as plaintiffs allege false arrest at an earlier time, Rouse's liability is dependent upon that of Rushing and Martin as allegedly acting in collaboration. The court has concluded that plaintiffs' claim of false arrest as to Rushing and Martin should be dismissed. Therefore, defendants Cannady Security, Cannady, and Rouse's motion for summary judgment on the issue of false arrest is granted.

### 5. Negligent Hiring, Screening, Retention, Supervision and Training of Cannady Security

Defendants Cannady Security, Cannady, and Rouse argue that plaintiffs' cause for negligent hiring, screening, retention, supervision and training as against Cannady Security must fail because it is premised upon defendant Rouse's liability. As this has yet to be determined, this motion is accordingly denied.

In sum, defendants Cannady Security, Cannady, and Rouse's motion for summary judgment is granted with respect to plaintiffs' false arrest claim. Defendants Cannady, Cannady, and Rouse's motion for summary judgment is denied as to

defendant Rouse's liability and whether Rushing and Martin (and thereby Rouse) acted under color of law. Defendants Cannady Security, Cannady, and Rouse's motion to dismiss the negligent hiring, screening, retention, supervision and training of Cannady Security, and plaintiff Amehra Brown's derivative claim is granted.

### CONCLUSION

For the foregoing reasons, defendant City of New York's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. On the issues of policy or custom, negligent training, whether off duty officers Rushing and Martin acted under color of law, and respondeat superior, the motion is **DENIED**. The City of New York's motion for summary judgment on the issue of false arrest is **GRANTED**. The City of New York's motion to deny plaintiffs' request to amend the complaint to state claims by Brown and Wahhab's infant children is also **GRANTED**.

Defendants Gallery, Rushing and Martin's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The motion to dismiss the derivative claim of plaintiff Amehra Brown and plaintiffs' claim of negligent hiring, screening, retention, supervision, and training on the part of defendant Gallery is **GRANTED**. Summary judgment is **GRANTED** to Defendants Gallery, Rushing and Martin as to plaintiffs' false arrest claim. As to the issue of whether Rushing and Martin acted under color of law, defendants Gallery, Rushing and Martin's motion is **DENIED**. Defendants Gallery, Rushing and Martin's motion to dismiss with regard to intentional infliction of emotional distress is **DENIED**.

Defendants Cannady Security, Cannady and Rouse's motion for summary judgment is **GRANTED IN PART** and **DENIED IN**

**PART.** The motion is **GRANTED** with respect to plaintiff Amehra Brown's derivative claim, and as to the false arrest claim. The motion is *DENIED* as to defendant Rouse's individual liability. The motion is also **DENIED** as to whether Rushing and Martin (and Rouse and others as allegedly collaborating) acted under color of law, as well as to the negligent hiring, screening, retention, supervision and training of Cannady Security. An appropriate Order accompanies this Opinion.

**SO ORDERED.**